Ona Mae REED, et al., Plaintiffs,

v.

William L. LUKHARD, et al.,
Defendants.

Civ. A. No. 83–0493–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

June 28, 1983.

Claude Lauck, Legal Aid Society of Roanoke Valley, Roanoke, Va., Gilman Roberts, Va. Legal Aid Society, Inc., Danville, Va., Jill Hanken, Virginia Poverty Law Ctr., Inc., Richmond, Va., Claire E. Curry, Client Centered Legal Services of S.W. Va., Inc., Castlewood, Va., for plaintiffs.

John P. Alderman, U.S. Atty., E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., Diane C. Moskal, Regional Atty., Charlotte Hardnett, Asst. Regional Atty., Office of the General Counsel, Region H.H.S., John A. Rupp, Senior Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiffs instituted this action on June 6, 1983, on their own behalf and on the behalf of all others similarly situated, in connection with the termination of benefits under the Aid to Families with Dependent Children program ("AFDC"), 42 U.S.C. §§ 601–676. These plaintiffs received nonrecurring payments of money which, according

to regulations promulgated by the Department of Health and Human Services, as adopted by the Virginia Department of Social Services, resulted in the suspension of benefits being received by plaintiffs under the AFDC program. Plaintiffs have moved for preliminary injunctive relief, and a hearing was held in pursuance thereof on June 22, 1983.

## I.

### CLASSWIDE RELIEF

■ Plaintiffs seek to represent the class of persons to whom the challenged regulations have been applied or against whom application of the regulations is imminent. Aside from the averments in the complaint, however, no evidence has been supplied to support class certification. It would be unwise to attempt to determine, in the abstract, the relative hardships as between the unnamed plaintiffs, were relief not granted, and the defendants, were prospective classwide relief granted. Accordingly, no preliminary injunction will issue as to the class.

## II.

### INDIVIDUAL RELIEF

In determining whether to issue a preliminary injunction, this court must "balance the hardships" by considering the "flexible interplay" among four factors: "the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; the likelihood of harm to the defendant if the requested relief is granted; the likelihood that plaintiff will succeed on the merits; and the public interest." *Federal Leasing v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir.1981). *See, also, Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1032 (4th Cir. 1980); *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir.1977).

> The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented, and plaintiff need not show a likelihood of success. Always, of course, the public interest should be considered.

*Blackwelder Furniture Co.*, 550 F.2d at 196. Accordingly, the court will examine the four factors in the context of this case.

### A. *Irreparable Harm to Plaintiffs.*

■ Plaintiff Reed was receiving AFDC benefits of $233 per month until July 1982. In June 1982, she received a lump sum payment of $5,400 in connection with a workman's compensation claim arising out of a work-related injury. Not realizing that receipt of the money could result in the loss of AFDC benefits, she spent the proceeds, by August 1982, on a used car and related expenses, a washing machine, a refrigerator, a vacuum cleaner, outstanding loans and bills, and other basic necessities. In July 1982, she was notified that her AFDC benefits were suspended for a twenty month period ending in March 1984. She and the one daughter now living with her presently subsist on $371 per month from food stamps, rental assistance, and a utility allowance.

Plaintiff Long and her husband, who were receiving AFDC benefits, recovered $10,245.95 in settlement of a claim for damages arising out of an April 1981 accident which had resulted in personal injuries to Mr. Long. Between April and October 1982, Mr. Long spent the entire sum on the downpayment for a $16,000 house, a used car, and other basic living expenses, and then he deserted the family nest. On June 1, 1982, the AFDC benefits were terminated for a 27 month period which is to expire in October 1984. Ms. Long and her three children now get along on $237 per month in food stamp benefits and $200 per month rent from roomers.

Plaintiff Wilcher was receiving AFDC benefits of $255 per month in support of her two minor children. In October 1982, daughter Diane Marie Terry was awarded $10,000 as a result of the settlement of a personal injury claim. Of that sum, $9,300

was placed in trust until Diane Marie's majority, and the remaining $700 was dispensed for immediate use, with the admonishment that it "be used solely for the education, maintenance and support of Diane Marie Terry ...." *Terry v. Davidson*, "Order" at 2 (Roanoke City Cir. Ct., Oct. 5, 1982). Ms. Wilcher used the money to purchase needed bedroom furniture and clothes for Diane Marie. As a result of the receipt of the $700, Ms. Wilcher's AFDC benefits were suspended for a period of two months. The benefits were paid pending appeal of the suspension, but the determination was upheld. Ms. Wilcher currently receives AFDC benefits of $229.50 per month, but $25.50 that would otherwise be paid is withheld each month in recoupment of the supposed overpayment made while the suspension of benefits was being appealed. Plaintiff Wilcher also receives food stamps.

Under these facts, the court concludes that denial of the injunction would result in irreparable harm to these named plaintiffs. In all probability, a future suit for retroactive benefits would be barred on Eleventh Amendment grounds in federal court. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Even were plaintiffs able to recover back payments in state court, they live so close to abject poverty that the deprivation of these amounts, representing a substantial percentage of their income, must be causing them irreparable harm. *See Chu Drua Cha v. Noot*, 696 F.2d 594, 599 (8th Cir. 1982), and cases cited therein. *See, also, Roselli v. Affleck*, 373 F.Supp. 36, 49 (D.R. I.), *aff'd*, 508 F.2d 1277 (1st Cir.1974). Although the loss to Ms. Wilcher is not as substantial as that to the other two plaintiffs, it is still "irreparable" in the same sense. The hunger or indignities that one may have to suffer from the unavailability of funds cannot be fully remedied by future payment of those sums. When the money is essential for life's basic necessities, the considerations go beyond the merely "financial" ones that defendants say this case involves. *See, e.g., Sperry International Trade, Inc. v. Government*

*of Israel*, 670 F.2d 8, 12 (2d Cir.1982) (suit between foreign government and large corporation).

Defendants place reliance on the facts that plaintiffs enjoy other sources of income, did not immediately bring suit when their benefits were cut off, and made conscious choices to squander their lump sum payments away. However, it appears that the money was spent prudently and without the knowledge that termination of benefits would ensue from its receipt. Moreover, the fact that other income is available does not mean that the denial of additional payments causes no irreparable harm; true, plaintiffs have not yet starved to death, but these payments could, no doubt, go far toward improving the daily quality of their lives. Finally, the fact that they waited several months to bring suit, although indicative of the fact that the plaintiffs can survive without this money, is equally consistent with the conclusion that they have lived with irreparable harm for which they now have no remedy.

In light of the foregoing, the court concludes that the three named plaintiffs are currently suffering harm which will be irreparable should the injunction not be granted.

### B. *Irreparable Harm to Defendants.*

Should the injunction issue as to these three plaintiffs, defendants will be required to restore two of them to the AFDC rolls and pay approximately $500 per month in additional benefits. Since the matter will probably be resolved by summary judgment, one way or the other, by September 1983, the total possible cost to the state and federal governments will not be excessive.

If recoupment is not possible, and the defendants ultimately prevail on the merits, this harm will be, indeed, irreparable. However, the court cannot conclude that recoupment will be impossible, given the defendants' ability to withhold or reduce future payments to which plaintiffs are admittedly entitled. Accordingly, the court

concludes that the government *may* suffer irreparable harm if the injunction issues, but this is not a foregone conclusion.

### C. *Likelihood of Success on the Merits.*

The pertinent section of the law provides that

A State plan for aid and services to needy families with children must ... (17) provide that *if a person specified in paragraph 8(a)(i) or (ii)* receives in any month an amount of *income* which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and (B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A).

42 U.S.C.S. § 602(a)(17) (Supp.1982) (emphasis added). Plaintiffs make two arguments. First, they say that the "person specified in paragraph 8(A)(i) or (ii)" must be a person receiving "earned income," in the month the lump sum payment is received, in order for the lump sum rule of § 602(a)(17) to apply to him or her. Second, they maintain that the lump sum payments received by these plaintiffs are not "income" within the meaning of § 602(a)(17) which may render the recipients thereof ineligible for benefits.

With respect to the first argument, 42 U.S.C.S. § 602(a)(8)(A)(i) and (ii) (Supp.1982) must be examined. It provides:

[A state plan shall]:

(8)(A) provide that, with respect to any month, in making the determination under paragraph (7), the State agency—

(i) shall disregard all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or a part-time student who is not a full-time employee attending a school, college, or university, or a course or vocational or technical training designed to fit him for gainful employment;

(ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month) ....

Plaintiffs maintain that this language, by its literal terms, clearly and unequivocally demonstrates that the "persons" to whom § 602(a)(17) applies are only those receiving other "earned income" in the month the lump sum is received. The defendant Secretary, however, has construed § 602(a)(17) to apply to *all* AFDC recipients, and the regulation interpreting the statute is reflective of this interpretation. 45 C.F.R. § 433.20(a)(3)(ii)(D). The State, which administers the plan at the operational level, has adopted the Secretary's interpretation in its own regulation. *ADC Manual* § 305.4(c).

Plaintiffs' position that § 602(a)(8)(A)(i) and (ii), as incorporated by § 602(a)(17), clearly contemplates that the lump sum rule applies only to AFDC recipients having earned income, is nothing but wishful thinking. If anything is to be decided from reading those two provisions in isolation, it would have to be in favor of the defend-

ants' contentions: § 602(a)(8)(A)(i) and (ii), without question, set forth certain categories of recipients, and then provide that certain portions of the "earned income" of those recipients be disregarded in making eligibility and need determinations under § 602(a)(7). It does not necessarily follow that the category of recipients set forth in § 602(a)(8)(A)(i) and (ii), as incorporated by § 602(a)(17), includes only those having earned income; to argue that it does suggest an uncritical reading of the provisions.

However, after a careful and exhaustive examination of those provisions and the AFDC program overall, one court found that plaintiffs in situations similar to the ones in this case enjoyed a substantial likelihood of prevailing on that point. *Sweeney v. Affleck*, 560 F.Supp. 1118, at 1122–1126 (D.R.I.1983). *Accord, Faught v. Heckler*, Civ.Action No. 83–66–A, slip op. at 3 (S.D. Iowa, Apr. 5, 1983). *See, also, Vermeulen v. Kheder*, Case No. K 82–135 CA4 (W.D.Mich., June 3, 1982) (proceeding in open court, tr. at 20–24).

These cases, especially *Sweeney*, demonstrate that plaintiffs have a colorable chance of prevailing on the merits. This is sufficient to warrant the imposition of preliminary injunctive relief upon defendants. In an analogous situation, the Fourth Circuit has said:

> While we express no opinion on these questions on their merits, we can say that their resolution is not immediately apparent. That is enough to say that [plaintiff] has not embarked on frivolous litigation, and thus interlocutory relief is not improper if [plaintiff] can also show a need for protection which outweighs any probable injury to [defendant].

*West Virginia Highlands Conservancy v. Island Creek Coal Co.*, 441 F.2d 232, 235 (4th Cir.1971). *Accord, Blackwelder Furniture Co.*, 550 F.2d at 195–96. Those considerations apply to the matter at bar.

Plaintiffs also contend that cash received as compensation for personal injuries must be considered as a "resource" and not "income," that it therefore cannot be "income" subject to the lump sum rule in § 602(a)(17), and that the defendants accordingly acted unlawfully in so treating it. They maintain that such payments were considered by the State to be "resources," prior to the passage of the lump sum rule, that such payments *are* treated as resources for other purposes of the AFDC program, and that such proceeds are not, in the ordinary usage, thought of as being "income," and are treated accordingly under many other laws, such as the Internal Revenue Code. According to plaintiffs, money can only constitute "income" if it provides a "measurable gain" to the recipient; money received in compensation for personal injuries merely restores the injured party to the *status quo*. Plaintiffs also argue, relatedly, that only "available" income is to be considered in the determination of AFDC eligibility, and that the payments made to these plaintiffs are no longer "available."

Defendants maintain that the very purpose behind that passage of the lump sum rule was to alter the definition of "income" to include such payments as the ones received by plaintiffs herein. They say that the definition afforded the term "income" under other laws is irrelevant to determining its meaning under the AFDC program of the Social Security Act. Further, that the very purpose of § 602(a)(17) is to deem the sort of "income" received by plaintiffs to be "available" whether it has been spent or not. Finally, overlaying all of defendants' arguments is the notion that the Secretary's interpretation of the statute, as codified by regulation and adopted by the State, is entitled to great deference.

Without addressing the parties' contentions in great detail, it is sufficient to state that plaintiffs' position is not frivolous, and raises a substantial question of law. Like plaintiffs' position with regard to the applicability of § 602(a)(17) to families having no "earned income," this is sufficient to warrant the granting of preliminary relief when plaintiffs have demonstrated the likelihood of irreparable harm that defendants have not. *West Virginia Highlands Conservancy*, 441 F.2d at 235.

 

D. *Public Interest.*

In light of the foregoing discussion, it is unnecessary to address the question of the public interest to any great degree. Obviously, the public interest lies in having the law correctly applied: if these plaintiffs are not entitled to relief the public interest would favor not giving them any; if they are entitled to relief, the public interest favors giving it to them immediately, so that they can improve the quality of their lives. In light of this, the court concludes that the public interest is not an important consideration in this case (although this conclusion would undoubtedly be different were the court to consider granting class-wide relief).

### SUMMARY AND CONCLUSION

Plaintiffs have demonstrated that the likelihood of irreparable harm to them if the injunction does not issue is great. Defendants have argued that they, too, would suffer irreparable harm, in the opposite event. However, defendants' claims have not been proven to the court's satisfaction, especially since the request for classwide injunctive relief is being denied at this time. Because the harm to plaintiffs outweighs that to the defendants, plaintiffs have raised sufficient substantial questions of law, and have established the requisite probability that they will prevail on the merits, to warrant the issuance of the preliminary injunction. The public interest favors neither position significantly to influence this conclusion.

An appropriate order will enter.

### ORDER

In accordance with the accompanying memorandum opinion, it is hereby

### ADJUDGED AND ORDERED

that defendants be and hereby are enjoined from applying the "lump sum" income rule of 45 C.F.R. § 233.20(a)(3)(ii)(D) and *ADC Manual* § 305.4(c) to all three named plaintiffs. Defendants shall accept and process applications for AFDC benefits for plain-

tiffs Reed and Long forthwith, and shall cease to withhold payments from plaintiff Wilcher in connection with application of the "lump sum" rule, and shall make all relevant determinations of need without regard to provisions of the "lump sum" policies discussed in the accompanying memorandum opinion; and that no bond shall be required; and it is further

### ADJUDGED AND ORDERED

that the request for a preliminary injunction is denied as to the class.