**Cindy J. VERMEULEN, on behalf of herself, her children and all others similarly situated, Plaintiff,**

v.

**Noble KHEDER, Acting Director of the Michigan Department of Social Services and Richard Schweiker, Secretary of Health and Human Services, Defendants.**

No. K 82–135.

United States District Court, W.D. Michigan, S.D.

Dec. 5, 1984.

Edward Hoort, Detroit, Mich., Richard Kupferschmidt, Kalamazoo, Mich., for plaintiff.

Martin Palus, Asst. U.S. Atty., Grand Rapids, Mich., Wendy Kloner, U.S. Dept. of Justice, Washington, D.C., William Basinger, Asst. Atty. Gen., Lansing, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

This case presents a challenge to the "lump sum rule" whereby recipients of Aid to Families with Dependent Children benefits are denied eligibility if they acquire non-recurring lump sums. 42 U.S.C. § 602(a)(17); 45 CFR 233.20(a)(3)(ii)(D) (1982). The lawsuit was filed by a destitute mother, Cindy Vermeulen, and a welfare rights group, the Michigan Welfare

Rights Organization. The Court previously granted Plaintiff's Motion for a Preliminary Injunction enjoining the Defendant officials from applying the lump sum rule to Ms. Vermeulen pending the outcome of this litigation.[1] In a Memorandum Opinion, the Court denied Plaintiff's Motion for Class Certification and dismissed the welfare rights group as a party.[2] The case is now before the Court on the parties' cross Motions for Summary Judgment.

The Complaint framed by Plaintiff contains five counts. (1) That the lump sum rule as administered violates the purpose of the Social Security Act and violates the statutory method of determining need, 42 U.S.C. § 602(a)(7), by treating unavailable finances as available; and (2) that the Defendants violate the legislative intent of Congress in applying the lump sum rule to those without earned income; and (3) that the Defendants' administration of the lump sum rule violates the due process clause of the Fifth and Fourteenth Amendments because it punishes persons for the acts of others by holding households responsible for money that has been lost, squandered, or stolen by others; and (4) that the administration of the rule by the Defendants violates the due process clauses of the Fifth and Fourteenth Amendments by establishing an irrebuttable presumption of availability of finances, regardless of actual availability; and (5) that the administration of the rule by the Defendants violates the equal protection clauses of the Fifth and Fourteenth Amendments by distinguishing between those persons who have applied for benefits and those who have not applied for benefits at the time the lump sum is dissipated.

## I. Plaintiff's Constitutional Claims

The constitutional claims raised by Plaintiff appear to have little merit *ab initio*. The equal protection claim likely would run afoul of the judiciary's general aversion to finding equal protection violations in the setting of economic legislation. *See, Dandridge v. Williams*, 397 U.S. 471, 495, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Legislative regulation of AFDC expenditures is well within the constitutional Article I power of Congress. *Walker v. Adams*, 741 F.2d 116, 119–20 (CA6 1984). Though all such legislation must be rationally related to legitimate governmental interests, the allocation of scarce resources to the most needy is rational. *Sweeney v. Affleck*, 560 F.Supp. 1118, 1125 (DC R.I. 1983), *rev'd sub. nom., Sweeney v. Murray*, 732 F.2d 1022 (CA1 1984).

Plaintiff's due process claims are directed at the legislation, *per se*, and not at the procedure by which the welfare agency applies the rules, so are not related to the analysis of *Goldberg v. Kelley*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).[3] Again, minimal scrutiny would indicate the constitutionality of the legislation. *See, e.g., Walker v. Adams, supra* at 120.

Finally, the courts are instructed to avoid reaching constitutional issues where there exists a sound statutory basis on which to decide the controversy. *Wolston v. Read-*

---

1. The Court applied the established rule of *Mason County Medical Association v. Knebel*, 563 F.2d 256 (C.A.6 1977), to find that Ms. Vermeulen had a substantial likelihood of success on the merits of Counts 1 and 2 of her Complaint; that she faced imminent irreparable harm due to the withholding of benefits she and her children needed to survive; that the preliminary injunction would not substantially harm anyone; and that the public interest would not be served by depriving Ms. Vermeulen of her only means of support.

2. Briefly, the Court held that the class failed the numerosity, commonality, and typicality requirements under Rule 23(a) of the Federal Rules of Civil Procedure. The manner in which an AFDC recipient obtains and expends the lump sum is very significant, and affidavits offered by some of the putative class members indicated a great factual disparity in this regard. The Court therefore found it inappropriate to certify a class. Dismissal of the welfare rights organization was necessitated by similar consideration of the factual disparities under the third prong of the analysis of organizational standing in *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1976).

3. For that analysis, in the context of the lump sum rule, *See Douthit v. Heckler*, 577 F.Supp. 88 (D.C.K.S.1983).

*ers Digest Association, Inc.,* 443 U.S. 157, 160–161, fn. 2, 99 S.Ct. 2701, 2703, fn. 2, 61 L.Ed.2d 450 (1979). In this case, resolution based on statutory analysis is appropriate and closer inquiry into the constitutional issues is unwarranted.

## II. Plaintiff's Earned Income Argument

The lump sum rule, 42 U.S.C. § 602(a)(17), was enacted as § 2304 of the Omnibus Budget Reconciliation Act of 1981 (OBRA)[4], and was implemented pursuant to 45 CFR 233.20(a)(3)(ii)(D) (1982). Prior to the enactment of the lump sum rule, an AFDC recipient's lump sum windfall was counted as income in determining his or her need only in the month it was received, and in subsequent months if the sum were actually available. Once the sum was expended, agency officials did not offset AFDC payments by the lump sum amount.

Congress enacted the lump sum rule in order both to promote responsible budgeting by AFDC recipients who received lump sum windfalls, and to reduce AFDC disbursements. *Walker v. Adams, supra,* at 120; *Sweeney v. Murray, supra* at 1027. Under the new rule, once the AFDC family receives the lump sum, it must budget to stretch the sum over a number of months computed by dividing the family's standard of need into the lump sum. If the AFDC recipient fails to budget the sum and expends it all before the expiration of the months computed by the agency, the recipient remains ineligible for AFDC benefits.

Immediately after its enactment, the lump sum rule was attacked in numerous district court cases with varying results. *Cf. Harris v. Heckler,* 576 F.Supp. 915 (D.C.N.J.1983) and *Faught v. Heckler,* 577 F.Supp. 1180 (D.C.Iowa 1983). In almost every case, the plaintiff's attack has focused on statutory construction; i.e. whether the Congress intended the lump sum rule to be applied to AFDC recipients who do not have earned income. Plaintiffs argued that when Congress passed the lump sum rule, at 42 U.S.C. § 602(a)(17), the wording of the statutory section referred to another section, § 602(a)(8)(A)(i) and (ii), which only pertained to those with earned income. The reference to 8(A)(i) and (ii), argued the plaintiffs, should be read to limit the applicability of the lump sum rule to those recipients who have earned income in addition to the lump sum windfall.

Plaintiff's counsel in this case has argued that point well, and in fact has focused the Court's inquiry on the "earned income" issue. Extensive and close analysis of the scanty legislative history has been provided.[5] All counsel working on this case have kept the Court apprised of all legislative developments, and have provided advance sheets and other materials. In her supplemental brief, filed September 10, 1984, Plaintiff continues to argue, in part based on the June 18, 1984 amendments to the lump sum rule, that Congress initially intended that the rule should only apply to those with earned income.[6]

---

**4.** P.L. 97–35, 95 Stat. 357, 845 (1981).

**5.** For a reported compilation of all germane legislative data, *see Sweeney v. Murray, supra.*

**6.** The amendment to 602(a)(17) was enacted as part of the Deficit Reduction Act of 1984, § 2632(a), as follows:

§ 2632(a) § 402(2)(17) of the Social Security Act is amended by adding at the end thereof (after and below subparagraph (b)) the following:

Except that the state may at its option recalculate the period of ineligibility as otherwise determined under subparagraph (A) (but only with respect to the remaining months in such period) in any one or more of the following cases: (i) an event occurs which, had the family been receiving aid under the State plan

for the month of the occurrence, would result in a change in the amount of aid payable for such month under the plan, or (ii) the income received has become unavailable to the members of the family for reasons that were beyond the control of such members, or (iii) the family incurs, becomes responsible for, and pays medical expenses (as allowed by the State) in a month of ineligibility determined under subparagraph (A) (which expenses may be considered as an offset against the amount of income received in the first month of such ineligibility).

(b) § 402(a)(17) of such Act is further amended—

(1) by striking out "a person specified in paragraph (8)(A)(i) or (ii)" in the matter preceding paragraph (A) and inserting in lieu thereof "a

Plaintiff argues that the amendment of the lump sum rule indicates, as do all other data, that the lump sum rule, as applied to Ms. Vermeulen in 1982, should have been limited to AFDC recipients with earned income. However well-made Plaintiff's earned income argument may be, the argument is clearly wrong. It is the law in this Circuit that the lump sum rule was not and is not limited to AFDC recipients with earned income, and is applicable to all AFDC recipients. *Walker v. Adams, supra.* There remains some question about how large a savings Congress intended to enjoy by passing the lump sum rule, *Sweeney v. Affleck, supra,* and the suffering of affected welfare recipients is unmistakably "harsh", *Walker v. Adams, supra,* but there is no doubting Congressional intent to enjoy the savings across the board as of the date of enactment. *Id.; Sweeney v. Murray, supra; Faught v. Heckler,* 736 F.2d 1235, (C.A.8 1984).

### III. *Plaintiff's Availability Argument*

#### A. *Introduction*

Generally speaking, the facts of a lawsuit may be de-emphasized either because the parties choose to sing the Siren's song of landmark theory, or because there truly is applicable principle so compelling as to preclude variance based on fact. In this case, the Siren call was strong. The lump sum/earned income argument predominated in the case, and because that argument is largely legalistic, the facts of Ms. Vermeulen's Complaint were not emphasized. Thus, although an argument over "availability", a factually oriented argument, was made, it was flawed by the paucity of facts and the beguiling echo of the central earned income argument.

#### B. *The Stipulated Facts*

The pertinent facts to which the parties stipulated are as follows:

> child or relative applying for or receiving aid to families with dependent children or any other person whose need the State considers when determining the income of a family", and

Plaintiff, Cindy Vermeulen, was a recipient of AFDC from approximately May of 1981 through December 1981. Plaintiff received AFDC on behalf of herself, her husband, and her three minor children. In early December, 1981, Plaintiff's husband received an inheritance of approximately $5,700. Plaintiff's husband paid approximately $1,000 in household bills and gave Plaintiff approximately $100 for Christmas. Later in December, after paying the $1,100 Plaintiff left the household. In March, 1982, Plaintiff was determined to be ineligible for AFDC through August of 1982, pursuant to the lump sum rule.

#### C. *Facts Elicited at the Preliminary Injunction Hearing*

The stipulated facts convey the sense that Plaintiff's husband received a lump sum inheritance, brought the money into the household, expended the sum of $1,100 and then departed. The remainder of the lump sum is not accounted for by the stipulated facts.

In contrast to the stipulated facts, the facts elicited from Plaintiff's testimony at the preliminary injunction hearing indicate that the lump sum was received only by the husband (Tr 4); that the husband left the household at or before the time he received the money (Tr 6); that the husband made a $1,000 rent payment and a $200 utilities payment directly to the creditors without first giving the money to Plaintiff (Tr 6–7); that Plaintiff received only $100 of the lump sum received by the husband (Tr 6); and that when the husband left he took the money with him and did not give any money to Plaintiff thereafter (Tr 33).

Though the facts derived from Ms. Vermeulen's testimony are not dramatically different from the stipulated facts, it becomes clear that Ms. Vermeulen never had control of, or access to the lump sum, except for $100. The lack of control was

> (2) effective on the date the enactment of this Act, by striking out "an amount of income" in the manner preceding subparagraph (A) and inserting in lieu thereof "an amount of earned or unearned income".

noted by the district court in *Harris v. Heckler, supra,* at 916 fn. 2, as a district factual aspect of this case which is unlike virtually all of the other lump sum cases. Although those cases also were framed in the context of challenging the lump sum rule, the AFDC recipient whose benefits were terminated invariably had received the lump sum themselves, or had received the benefit of the lump sum.[7] For example, the facts of the *Walker v. Adams* case are typical of the lump sum cases:

> In this case Plaintiff Walker received [a lump sum] from an automobile accident which paid her slightly over $5,000. She notified her caseworker about the payment that same day, but received no warning about disqualification for AFDC benefits and was not advised to retain the payment for living expenses. She spent substantially all of the funds, shortly after their receipt on a used car, car insurance, clothes, furniture, appliances, and groceries. Slip Op. p. 4.

Similarly, the *Sweeney* case involved an AFDC recipient who received a personal injury settlement and then, in a sad sequence of misadventure reminiscent of a Hogarth series, parceled out her sum and became destitute. 560 F.Supp. 1120–1122.

There is an obvious and critical difference between the facts in the typical lump sum case, and the facts in Ms. Vermeulen's case.

#### D. The Regulatory Scheme Implementing the Lump Sum Rule

In construing the lump sum rule, 602(a)(17), the *Sweeney* court, on which *Walker v. Adams* relied, noted that the Health and Human Services played a significant role in drafting the implementing regulation of the rule. For that reason the regulation deserves special deference, *Sweeney, supra* at 1029, citing *Zuber v. Allen,* 396 U.S. 168, 192, 90 S.Ct. 314, 24

L.Ed.2d 345 (1969). The implementing regulation should be disregarded only where there is a "compelling indication" of wrong. *Red Lion Broadcasting Company v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969).

It is worthwhile to compare the "old" pre-lump sum regulation at 45 CFR 233.-20(a)(3)(ii)(D) (1981) with the "new" regulation, which incorporates the lump sum amendment, at 233.20(a)(3)(ii)(D) (1982):

*1981:*

(D) Net income available for current use and currently available resources shall be considered; income and resources are considered available both *when actually available and when the applicant or recipient has a legal interest in the liquidated sum and has the legal ability to make such sum available for support and maintenance.* For AFDC when the assistance unit's income after application of applicable disregards exceeds the State need standard for the family (unless such excess was caused by a regular and periodic extra paycheck from a recurring income source, in which case *see* § 233.24(d)), the family will be ineligible for aid for the number of full months derived by dividing this total income by the need standard applicable to the family starting with the month in which the income is received. Any income remaining after this calculation is treated as income received in the first month following the period of ineligibility. (Emphasis added)

*1982:*

(D) Net income, except as provided in paragraph (a)(3)(xiii) of this section, and resources available for current use shall be considered; income and resources are considered available both *when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has a legal ability to*

7. *Cf. Wylie v. Kitchin,* 589 F.Supp. 505 (N.D.N.Y. 1984); *Woolfolk v. Leadbetter,* (N.D.Ga. June 29, 1984) No. C 83–1244 A; *Faught v. Heckler,* 577 F.Supp. 1180 (D.Iowa 1983); *Reed v. Lukhard,* 578 F.Supp. 40 (W.D.Va.1983); *Douthit v. Heck-* *ler, supra; Harris v. Heckler, supra; Bowmaster v. Petit,* 576 F.Supp. 354 (D.Me.1983); *Betson v. Cohen,* 578 F.Supp. 121 (E.D.La.1983); *Clark v. Harder,* 577 F.Supp. 1085 (D.C.KS.1983); *Walsh v. Heckler,* (E.D.Cal.1984) No. S–84–0406 RAR.

*make such sum available for support and maintenance.* When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of nonrecurring lump sum income, the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size. Any income remaining in this calculation is income in the first month following the period of ineligibility. The period of ineligibility shall begin with the month of the receipt of the nonrecurring income or, at state option, as late as the corresponding payment month. For purposes of applying the lump sum provision, family includes the AFDC assistance unit and any other individual whose lump sum income is counted in determining the period of ineligibility. A State may shorten the period of ineligibility where it finds that a life-threatening circumstance exists, and the non-recurring income causing the period of ineligibility has been or will be expended in connection with the life-threatening circumstance. Further, until that time the non-recurring income must be used to meet the essential needs and currently the assistance unit must have no other income or resources sufficient to meet the life-threatening circumstances. (Emphasis added).

In analyzing the "old" and "new" regulations, it would appear to be clear that the two versions of the regulation begin in the same fashion. That is, the regulation in each case states the general rule that net income and resources shall be considered available *"both when actually available and when the applicant and recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance."* (Emphasis added).

Then the versions begin to diverge. The 1981 pre-lump sum regulation generally states that a lump sum received by the AFDC assistance unit is counted in the month it is received but only thereafter if it

is "remaining", or actually available. In contrast, the 1982 post-lump sum regulation states that the lump sum received by the assistance unit is presumed to be available in subsequent months, so that *"the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family that size."* (Emphasis added). The 1982 regulation then permits the state, at its option, to except the family from the lump sum rule in case of a "life threatening circumstance".

■ In summary, both the pre-lump sum and post-lump sum regulations contain the same threshold rule: that for income to be considered, it must be actually available or legally available. The lump sum rule contained in the "new" 1982 regulation is an exception to the threshold rule. The lump sum rule requires a family to budget the lump sum it actually received or was legally able to use, or suffer the consequence of ineligibility. And the "life threatening circumstance" is the only regulatory exception to the consequence of ineligibility.

### E. Applying the Regulatory Scheme to Ms. Vermeulen

■ It should be apparent that the lump sum rule should not apply to Ms. Vermeulen's family for a $5,700 offset. The lump sum rule is an exception to the threshold rule of actual or legal availability. Unless the family receives the lump sum, or has the ability to spend the lump sum, the presumption of availability raised by the lump sum rule cannot be charged against the family.

That is not to say that a lump sum need remain "actually available" to be counted in computing the family's standard of need. Congress' intent clearly was not to require actual availability:

The committee believes that lump sum payments should be considered available to meet the ongoing needs of an AFDC family.... The amendment would require that such income *received* in a

month be considered available in the month it is *received* and also in future months. (Emphasis added). S.Rep. No. 139, 97th Cong. 1st Sess., Reprinted in 1981 U.S.Code Cong. & Ad.News 771. Therefore, the lump sum need not be "actually available" for the duration of the time computed by the agency. Once the AFDC family has received a lump sum, it may be considered constructively available in subsequent months.

The concept of constructive availability of resources is applied in other social welfare contexts. However, case law dealing with constructive availability all have one thing in common which is missing in Ms. Vermeulen's case. In all those cases, there was either a past receipt and benefit from money, or a legal ability to make the money available. Literally, the threshold of the AFDC unit had been crossed by the lump sum. Money was taken into the family and expended for goods and services. The family benefited.[8]

The federal Defendant cites the proposition that, for AFDC purposes, resources do not have to be "in hand, readily liquidated, or under the control of the individual." *Randall v. Goldmark*, 495 F.2d 356, 361 (C.A.1 1974) *cert. den.*, 419 U.S. 879, 95 S.Ct. 144, 42 L.Ed.2d 119. While that dicta is illuminative of the *Randall* court's reasoning, the court's holding was:

> We believe that to qualify as a currently available resource under the Act and regulation, it need only be shown that regular payments made by third parties *directly benefit* an AFDC recipient in such a manner that they are *actually used* to defray expenses which such recipient would otherwise incur. *Cf. Cooper v. Carelson*, 1973, 31 Cal.App.3d, 546, 107

Cal.Rptr., 502. *Randall, supra* at 361. (Emphasis added)

Presumably using the same logic, another court treated garnished wages as "available," because they were used to offset a debt currently owed by an AFDC recipient. *Powell v. Austin*, 427 F.Supp. 749 (E.D.Va. 1977). Similarly, a state court challenge to income offset against welfare benefits was denied where the recipient claimed income was not currently available due to a technical accounting system—the "lag budgeting" system—used by the state, even though the resources had been used by the recipient. *Hinderer v. Department of Social Services*, 95 Mich.App. 716, 291 N.W.2d 672 (1980) *lv. den.*, 409 Mich. 930. Similarly, with the medicaid program, the agency "deems" the income of one spouse available for the use of the other spouse although the spouse is separated and confined to an institution. *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981).

As the foregoing should indicate, the prevailing case law and the 1982 regulation promulgated by the Secretary in this case hinge on the fact that the recipient or family *received* some money or benefit. The federal Defendant acknowledges the receipt threshold:

> Pursuant to the regulation at issue, 45 CFR 233.20(a)(3)(ii)(D), the AFDC claimant need only have a *legal interest in the income and a legal ability to make the income available.* (Original emphasis, Federal Defendant's Memo of June 14, 1984, at p. 16).

The Federal Defendant then states, conclusorily, that Ms. Vermeulen had legal control over the lump sum, without explaining *how* she had control.[9]

---

8. The AFDC program is authorized and funded "For the purpose of encouraging the care of dependent children in their own homes or the homes of relatives..." 42 U.S.C. § 601. All the wording that follows that opening phrase relates to procedure for the encouragement of the care. To enforce a legal fiction against those without recourse to finances or adequate legal representation would be to repeal the intrinsic compassion of the AFDC program.

9. "The lump sum income received by the Vermeulen assistance unit was real, not assumed, and it was actually received by the unit. Plaintiff reported this income to her caseworker and, on that basis, the family was deemed ineligible for benefits. Also, Plaintiff and her children received some benefit from the lump sum. Where a claimant has either obtained some value or benefit from the income, it must be considered to have been 'actually available'. *Randall v. Goldmark, supra.* Further, Plaintiff, as

If it be the Defendants' argument that simply because Ms. Vermeulen was married to an errant husband she was legally able to spend the lump sum, the argument is fallacious for two reasons. First, Michigan is not a community property jurisdiction. Secondly, such an interpretation would transform the lump sum rule from "harsh" to draconian.[10]

■ If it be the Defendants' argument that an AFDC family is exposed to *total* liability because of the receipt of *fractional* benefits of the lump sum, then that argument is on point but unavailing. As the *Randall* case indicates, the inquiry of the agency and the offset of AFDC aid must relate to monies which "... directly benefit an AFDC recipient in such manner that they are actually used..." *Randall, supra,* at 361.

Finally, the Court takes judicial notice of the fact that the statute, 42 U.S.C. § 602(a)(17), speaks in terms of income *received;* the implementing regulation, 45 CFR 233.20(a)(3)(ii)(D) (1982), speaks of income *received;* the pertinent case law, *e.g. Walker v. Adams,* invariably deals with *received* income; and subsequent amendments speak of *received,* as well.[11]

■ Any suggestion by the Plaintiff that the "actual availability" concept survived the enactment of the lump sum rule clearly is misplaced. But on the deciding point of this case, the point that financial benefit must be received by the family in order to offset AFDC benefits, Plaintiff does prevail. In order to have a "legal interest" or "legal ability" to spend finances, and thereby have those finances counted as income under (D), the family assistance unit against which the finances are counted must have received either the finances or the benefit.

■ Accordingly, Plaintiff's family may be held potentially liable for the amount of benefit received—$1,200 in rent and utilities payments, and $100 in gifts—but not for the remainder of the $5,700 lump sum by which it did not benefit.

## IV. Walker v. Adams and the Life Threatening Circumstances Exception to the Lump Sum Rule

Plaintiff's family is potentially liable for the receipt of the $1,200 debt relief and the $100 cash "gift". That does not automatically result in actual liability, under this Circuit's rule in *Walker v. Adams.*

In *Walker v. Adams,* the plaintiff received a lump sum insurance settlement of slightly more than $5,000. Like Ms. Vermeulen, Walker notified her caseworker and then, receiving no warning to the contrary, proceeded to expend almost all of the sum on a used car, car insurance, clothes, furniture, appliances, and groceries. Judge Edwards, pursuant to the Secretary's suggestion, noted that Walker had not availed herself of the proper adminis-

Mr. Vermeulen's wife, had a legal interest in the lump sum and the legal ability (although it was not exercised) to make the sum available." (Federal Defendant's Memorandum in Opposition filed June 14, 1984.)

**10.** The Court is mindful of the agency's suggestion that individual determinations are not a constitutional prerequisite when administrative difficulties "outweigh the marginal increments and the precise effectuation of congressional concern which they might be expected to produce." *Kollet v. Harris,* 619 F.2d 134, 139 (C.A.1 1980). But reliance on the receipt threshold does not entail extraordinary inquiry, any more than does the current inquiry or reliance on the AFDC client to report the lump sum. Presumably, the *Schweiker v. Gray Panthers* reasoning should apply where the spouse does not leave the family and there is no legal separation. In Ms. Vermeulen's case, there was abandonment of the family by the husband, and the private bar was unwilling and the public interest bar was unable to provide the penniless Plaintiff any relief in the form of legal separation or legally-obtained support payments. (See Transcript of Ms. Vermeulen's Testimony at the June 3, 1982 Hearing on the Preliminary Injunction). If the lump sum rule were applied automatically in such cases, the result would be to reward the selfishness of family members who receive personal windfalls and abdicate familial responsibility, and at the same time it would cruelly punish the needy children left behind.

**11.** *See* amendment of the lump sum rule enacted as § 2632(a) of the Deficit Reduction Act of 1984, subsection (ii).

trative remedy available under the "life threatening circumstances" exception to the lump sum rule, also at 45 CFR 233.-20(a)(3)(ii)(D) (1982). *Walker v. Adams*, at 120. That is, once Walker had spent her money and become potentially ineligible for AFDC, she could still be eligible for benefits if the state agency found that she fit the "life threatening circumstances" exception:

> ... A State may shorten the period of ineligibility where it finds that a life-threatening circumstance exists, and the non-recurring income causing the period of ineligibility has been or will be expended in connection with the life threatening circumstance... 45 CFR 233.-20(a)(3)(ii)(D) (1982).

The regulation clearly comports with Congress' two major motives in passing the lump sum rule; i.e. to promote responsible budgeting by AFDC families and reduce AFDC disbursements. *See Walker, supra,* at 120.

Given the sad testimony of Ms. Vermeulen, and the fact that the $1,200 rent and utilities payment by which the family benefited went directly to fundamental life sustaining needs, it is difficult if not impossible to imagine a state refusing to apply the "life threatening circumstances" offset to the period of ineligibility arising from the $1,200. That remains a determination for the State, however, as does the $100 Christmas "gift" issue.

### V. The Motions to Intervene and to Recover Retroactive Benefits

Plaintiff has moved the Court to award retroactive benefits, and there have been filed numerous motions to intervene.

The Court expressly does not reach the question of retroactive benefits, both because it would be impossible to calculate such a sum prior to a State determination of the "life threatening circumstances" question, and because the question of retroactive benefits has not been developed in this case commensurate with its far-reaching significance. Neither Plaintiff's argument, which rests largely on implication, or Defendants' response, which rests on implication and analogy, provide advocacy sufficient to explore the controversy.

■ The intervenor's motions have been reviewed by the Court.[12] It goes without saying that these intervenors are truly pitiable human beings, made more pitiable by the passage of the lump sum rule. Nonetheless, the factual disparity of the intervenors' affidavits makes it impossible for the Court to permit intervention, since intervention would inevitably delay or prejudice the adjudication of Ms. Vermeulen's factually distinct claim.[13] (Rule 24(b) of the Federal Rules of Civil Procedure.) Accordingly, the Motions to Intervene are denied.

### VI. The Motion to Reconsider Class Certification

■ As noted above, the Court previously denied Plaintiff's Motion for Class Certification, because of the failure to meet Rule 23(a) numerosity, commonality, and typicality requirements. Also, the Court noted the "necessity" limitation of the Sixth Circuit in *Craft v. Memphis Light, Gas and Water Division*, 534 F.2d 684 (C.A.6 1976) *aff'd on other grounds*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

**12.** Upon the advice of Plaintiff's counsel, there are a large additional number of intervenors wishing to enter this lawsuit. The Court requested that counsel hold these many pleadings in abeyance pending a decision on the cross motions for summary judgment.

**13.** It should be apparent from the Court's analysis of the case that crucial significance attaches to the manner of the receipt and expenditure of the sum, both for purposes of assessing potential liability and actual liability. Of all the 45 potential intervenors, Leesha Edwards, Cindy

Sleight, Fatima Alwan, Mrs. McIver, Linda Duncan, Agnes Scott, Sherry Haines, and Jacqueline Young would seem, at first reading, to have generic factual compatibility with Ms. Vermeulen's claim, in that in each case the family has been assessed liability for financial benefits not received. Yet, even given such generic compatibility, there is obviously significant variation possible in determining the facts, absent the parties' willing stipulation. Therefore, the Court may not entertain these additional claims.

In reconsidering the class certification question, the Court has de-emphasized the *Craft* holding in light of *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). This suit is best analyzed in accordance with instruction of the Sixth Circuit, in *Senter v. General Motors Corporation*, 532 F.2d 511 (C.A.6 1976), *cert. den.* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150, wherein the appeals court granted class-wide equitable relief pursuant to Rule 23(b)(2).

The class sought to be certified is one consisting of all AFDC applicants and recipients, as well as various subclasses, focused by the separate Counts of Plaintiff's Complaint. The Court has denied relief on all counts except Count 2, the § 602(a)(17) statutory violation, and has narrowed the focus of the relief under Count 2 to the issue of legal interest or legal ability—receipt—of the lump sum.

Plaintiff's affidavits and general pleadings convince the Court that the *Senter* standard for class certification has been met. The class contains a verifiable minimum in excess of even formalistic numerosity requirements under 23(a)(1). Similarly, the class suffers the common problem of being assessed lump sum liability under pertinent regulation even though the lump sum was not received for the benefit of the AFDC unit, 23(a)(2). The class, as defined broadly by Plaintiff is absolutely typical, 23(a)(3), and there is no doubt about the adequacy of representation, 23(a)(4).

If the requirements of 23(a) are met, and 23(b)(2) are met, then class-wide equitable relief is appropriate. *Senter, supra.* Subsection (b)(2) states:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Subsection (b)(2) would seem appropriate on its face to this case. As noted in the Advisory Committee Notes to the 1966 Amendments to Rule 23, the (b)(2) subsection is appropriate in a lawsuit "even if [the injury] has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." 39 F.R.D. at 102.

The affidavits and pleadings of Plaintiff suggest that there are two class-wide potential harms which require equitable relief in this case. First, there is the lack of knowledge by recipients and (apparently some) caseworkers of the workings of the lump sum rule. Consequently, as Ms. Vermeulen's specific case indicates, an AFDC recipient risks substantial harm by honestly reporting lump sum income to the agency, without being advised of how to manage the lump sum. Furthermore, an incorrect report of the receipt of a sum certain which is subsequently not received, as was the case with Ms. Vermeulen, may have a devastating effect on the assistance unit. Second, there is the problem of applying the lump sum rule to those who have not received the sum, or do not have the threshold "legal interest or legal ability" to spend the sum.

Accordingly, a class consisting of all AFDC applicants and recipients in this jurisdiction is certified.

## VII. Relief Granted

In light of the above reasoning, the Court will issue four orders resolving the motions and directing the appropriate conduct of the parties.

As to the Motions for Summary Judgment, an Order will issue denying Plaintiff's motion in part as relates to the legal questions of "earned income" and "actual availability", and granting Plaintiff's motion in part, as it relates to the matter of the statutory violation arising from the Defendants' improper application of the lump sum rule to Ms. Vermeulen, as analyzed in Sections III E. and IV of this Opinion.

A separate Order will issue certifying a class of individuals situated similarly to Ms. Vermeulen.

A separate Order will issue withholding Declaratory Judgment, as that relief appears unnecessary at this time.

An Injunction will issue directing that notification be given to AFDC recipients who may be unaware of the operation of the lump sum rule; and restraining the Defendants from incorrectly applying the lump sum rule to Ms. Vermeulen, either prospectively or retrospectively, due to her husband's inheritance; and restraining the Secretary of Health and Human Services from issuing to AFDC offices, administrators, agents, or employees in the Western District of Michigan any directives which are inconsistent with this Opinion.

### VIII. Conclusion

The rule as the Court today construes it is "harsh", for it exacts a savings from those least able to pay. It requires the poor to budget at a time when the federal government's deficit is astronomical. It places further limitation upon those for whom a lifetime of limitation is the norm.

Yet the rule as the Court today construes it is far less harsh than it would be under the Defendants' interpretation. Whereas the Court requires responsible expenditure of finances the AFDC family receives, the Defendants would require an impossibility—the responsible expenditure of finances which were never received.

In ruling, the Court begins with the congressional intent in enacting the AFDC program. First and last, this program is an eloquent statement of compassion for our needy children. It is evident that in difficult times a subsequent Congress will amend, but will not retract that statement of compassion.