Donna SWEENEY, et al., Plaintiffs, Appellees,

v.

Joseph J. MURRAY, Defendant, Appellee.

Margaret Heckler, etc., Defendant, Appellant.

Donna SWEENEY, et al., Plaintiffs, Appellees,

v.

Joseph J. MURRAY, Defendant, Appellant.

Nos. 83–1738, 83–1739.

United States Court of Appeals, First Circuit.

Argued March 7, 1984.

Decided April 27, 1984.

Jenny A. Sternbach, Atty., Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Lincoln C. Almond, U.S. Atty., Providence, R.I., and Robert S. Greenspan, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., were on brief, for Margaret Heckler.

William M. Walsh, Sp. Asst. Atty. Gen., Providence, R.I., on brief for state appellants.

Barry Best, Providence, R.I., with whom Cynthia Mann, Brooklyn, N.Y., was on brief, for Donna Sweeney, et al.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

COFFIN, Circuit Judge.

This case requires us to determine whether the treatment of nonrecurring lump-sum income in the Aid to Families with Dependent Children (AFDC) program applies to all AFDC families or only to those AFDC families with earned income in the month of receipt of a lump-sum payment. Appellants, the Secretary of Health and Human Services (HHS) and the Director of the Rhode Island Department of Social and Rehabilitative Services, appeal from the district court's award of summary judgment to plaintiff class, which consists of former AFDC recipients whose benefits were terminated for a specified period of time following receipt of lump-sum income

in a month in which they had no earned income.

Congress enacted the new lump-sum rule as part of the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. 97–35, which amended section 402(a)(17) of the Social Security Act, 42 U.S.C. § 602(a)(17). The amended rule provides that when an AFDC family receives a payment of nonrecurring lump-sum income (such as an inheritance, a personal injury judgment or settlement, or a workers' compensation award), the family becomes ineligible for AFDC for a prescribed period of time. State officials determine the period of ineligibility by dividing the lump sum [1] by the family's monthly need standard. The rule in effect treats nonrecurring lump-sum income as a substitute for future AFDC payments. The lump-sum income must be prorated over the specified period of months to meet the family's needs.

Plaintiffs challenged the federal and state regulations that apply the lump-sum rule to all AFDC recipients. *See* 45 C.F.R. § 233.20(a)(3)(ii)(D); Rhode Island Social and Rehabilitative Services Manual § 207, pp. 23–26. Plaintiffs contended, and the district court agreed, that the governing statute, 42 U.S.C. § 602(a)(17), applies only to AFDC families with earned income at the time of receipt of the lump-sum payment. The district court initially issued a preliminary injunction, finding that the statutory language, the legislative history, and the purpose of the AFDC program supported plaintiffs' restrictive reading of the scope of the lump-sum rule. *Sweeney v. Affleck,* 560 F.Supp. 1118 (D.R.I.1983). The district court subsequently granted plaintiffs' motion for summary judgment, incorporating by reference the court's reported preliminary injunction opinion, and enjoined defendants from applying the fed-

eral and state lump-sum income regulations to members of the plaintiff class.

While the district court wrote in February 1983 on an apparently clean slate in answering this question of statutory construction, in the past year many other district courts have answered the same question.[2] No other reported district court decision subscribes to the *Sweeney* court's interpretation of 42 U.S.C. § 602(a)(17), although in several reported decisions, district courts have granted relief to plaintiffs on other grounds.[3] *See Betson v. Cohen,* 578 F.Supp. 154 (E.D.Pa.1983) (judgment for defendants); *Walker v. Adams,* 578 F.Supp. 50 (W.D.Ky.1983) (denying motion for preliminary injunction), *injunction pending appeal granted,* No. 83–5527 (6th Cir. Sept. 2, 1983) (argued March 26, 1984); *Reed v. Lukhard,* 578 F.Supp. 40 (W.D.Va. 1983) (finding plaintiffs' statutory argument "nothing but wishful thinking", but granting preliminary injunction because other cases, "especially *Sweeney,* demonstrate that plaintiffs have a colorable chance of prevailing on the merits"); *Faught v. Heckler,* 577 F.Supp. 1180 (S.D. Iowa 1983) (explicitly rejecting *Sweeney* in granting defendants' motion for summary judgment); *Clark v. Harder,* 577 F.Supp. 1085 (D.Kan.1983) (explicitly rejecting *Sweeney* in denying motion for preliminary injunction); *Douthit v. Heckler,* 577 F.Supp. 88 (D.Neb.1983) (explicitly rejecting *Sweeney's* reasoning, but ordering a hearing on plaintiff's eligibility for benefits under the lump-sum rule's exception for life-threatening situations).

## I. Statutory Language

We start with the language of the statute. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). But we cannot end with it, for

---

1. State officials must also include in the numerator of this calculation the family's income, minus certain disregarded earned income. *See* 42 U.S.C. § 602(a)(8); § 602(a)(17).

2. Defendants state in their brief that lawsuits challenging the application of the lump-sum rule to AFDC families without earned income

have now been filed in more than 25 district courts.

3. In addition, in (perhaps only temporarily) unreported opinions, two out of five district courts have adopted the reasoning of the court below.

our dissection of the statute under the microscopes of both parties leaves us with the conclusion that neither side convincingly accounts for all of the internal references to other subsections of the statute, for the now obvious reason that 42 U.S.C. § 602(a)(17), while both highly technical and complex, is anything but elegantly drafted.

Subsection (a)(17) does three things: in the opening paragraph, it specifies the persons whose receipt of lump-sum income could subject them to ineligibility periods; it instructs in (a)(17)(A) how to compute the period of ineligibility; it instructs in (a)(17)(B) what to do with amounts left over after such period expires. Since the precise wording and statutory cross-references are important, the entire subsection is reproduced in the margin.[4] This subsection refers to other subsections of the same statute, (a)(8)(A)(i) and (ii), which require that in computing income and resources of any AFDC recipient (as required by still another subsection, (a)(7)), a state agency must disregard all or part of the earned income of certain persons. These subsections are also reproduced verbatim in the margin.[5]

Plaintiffs argue that the reference in subsection (a)(17) to "a person specified in" subsection (a)(8)(A)(i) or (ii) indicates that Congress intended to confine the impact of the lump-sum rule to those AFDC families that had earned income at the time they received a lump-sum payment. Plaintiffs maintain that subsection (a)(8) has relevance for only those AFDC families with earned income; if Congress had intended universal application of the lump-sum rule, Congress would have used subsection (a)(7),[6] rather than (a)(8)(A)(i) and (ii), as the definitional cross-reference in subsection (a)(17).

The district court cited subsection (a)(31) —the "stepparent deeming" provision that was adopted contemporaneously with subsection (a)(17)—as an example of congressional reference to subsection (a)(7) to signal application of the rule to all AFDC families. Subsection (a)(31) requires an AFDC state plan to "provide that, in mak-

**4.** OBRA amended 42 U.S.C. § 602(a)(17) to require state AFDC plans to:

"(17) provide that if *a person specified in paragraph (8)(A)(i) or (ii)* receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) *the standard of need applicable* to such family, and

(B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A)." (Emphasis added.)

**5.** 42 U.S.C. § 602(a)(8)(A)(i) and (ii) require a state AFDC plan to:

"(8)(A) provide that, with respect to any month, in making the determination under paragraph (7), the State agency—

(i) shall disregard all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or a part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment;

(ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month)."

**6.** 42 U.S.C. § 602(a)(7) provides that state plans must, in determining need, consider the income and resources "of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child or relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid".

ing the determination for any month under [subsection (a)(7)], the State agency shall take into consideration" certain income of a stepparent living with a dependent child. The district court reasoned that "[s]imilar language could have been used in § 602(a)(17) if Congress had intended the 'lump sum' rule to apply to all families". 560 F.Supp. at 1124.

Plaintiffs further contend that the multiple references to subsection (a)(8) show that the first reference must mean something different from merely calling attention to the need to disregard certain income in calculating a family's need. Two other later references in subsection (a)(17) explicitly remind the states to use the earned income disregards in making lump-sum ineligibility calculations.[7] Plaintiffs thus argue that the first reference is not merely redundant, but rather restricts application of the lump-sum rule to those AFDC families with earned income in the month in which they receive a lump-sum payment.

Defendants read the statute quite differently. They argue that the reference in section 602(a)(17) to subsections (a)(8)(A)(i) and (ii) serves two purposes: it defines the "universe" of persons subject to the rule *and* alerts state agencies to take into account earned income disregards. Thus, rather than limiting the application of the lump-sum rule to AFDC recipients with earned income, the reference to (a)(8)(A)(i)

and (ii) tells state plans how to treat the earned income, if any, of lump-sum recipients.

Defendants note that subsection (a)(8)(A)(ii), in language virtually identical to that used in subsection (a)(7), "specifies" the entire universe of AFDC recipients and essential persons.[8] In *Drysdale v. Spirito*, 689 F.2d 252, 259 (1st Cir.1982), we noted the similarity of the persons referred to in subsections (a)(7) and (a)(8)(A)(ii):

"The language of subsection (a)(8)(A)(ii) [referring to persons], by and large, tracks the language of subsection (a)(7); indeed the subsections refer to one another. There is no indication in the language of the statute or in the legislative history suggesting more than an intent to echo subsection (a)(7), applying the [earned income disregards] to the income of any of the persons specified in that subsection."

Thus, Congress may have used subsection (a)(8) as the most convenient shorthand reference for persons subject to the lump-sum rule, in that subsection (a)(8), and not (a)(7), is referred to throughout subsection (a)(17). Granted that the lump-sum rule contains redundant references to subsection (a)(8), such redundancy persists even under plaintiffs' construction. The only difference is that under plaintiffs' construction, there is one redundant use and under defendants' two.[9]

---

**7.** These later references in § 602(a)(17) to subsection (a)(8) provide that the lump sum, "together with all other income for that month *not excluded under paragraph (8),*" is counted, and that "the [lump sum] and all other income received in such month, *not excluded under paragraph (8)*", is divided by the standard of need to determine the ineligibility period. (Emphasis added).

**8.** Subsection (a)(8)(A)(ii) refers to "any child or relative applying for or receiving aid to families with dependent children, or ... any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination ...." 42 U.S.C. § 602(a)(8)(A)(ii).

**9.** The last of the three references to (a)(8) in (a)(17) tells the state to consider earned income disregards in calculating ineligibility periods under the lump-sum rule. No other reference to

(a)(8) in (a)(17) would be necessary. Plaintiffs' theory does not explain how the *second* reference to (a)(8) could have any function other than to remind state officials to apply the earned income disregards and to ward off statutory arguments to the contrary. Why could not the first reference to (a)(8) serve the same function?

Plaintiffs also noted a different redundancy: if subsection (a)(8)(A)(ii) directs the application of the lump-sum rule to all AFDC families, then the reference to (a)(8)(A)(i)—which applies to dependent children who attend school—is redundant: Why include subsection (i) if subsection (ii) specifies the entire universe of AFDC recipients and essential persons? We agree that a redundancy exists, but we fail to see how this slackness in the statute aids plaintiffs. The reference to (i) is just as redundant under plaintiffs' interpretation of the lump-sum rule as it is under defendants'.

None of these points, alone or in combination, are sufficient to clinch the argument. Having weighed both parties' constructions of the statute, we find that the statutory language itself could support either construction, but not without some strain. The statute is ambiguous. *See Faught v. Heckler*, 577 F.Supp. at 1185 (quoting *Clark v. Harder*, 577 F.Supp. at 1087); *Douthit v. Heckler*, 577 F.Supp. at 90–91. We must therefore turn to its legislative history and to administrative interpretation to divine legislative intent.

## II. Legislative History

■ The legislative history of 42 U.S.C. § 602(a)(17) is as clear as its language is ambiguous. Committee reports reveal that Congress had two major motives in amending subsection (a)(17): to promote responsible budgeting of lump-sum income by all AFDC families and to reduce AFDC disbursements by a specified amount based on calculations that had assumed application of the lump-sum rule to all AFDC families, not only to those AFDC families with earned income.

The Senate Report explains the primary rationale for the amended lump-sum rule:

"*Present Law.*—Any payments that meet the definition of income—for example, retroactive social security benefits—are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered as a resource in the months thereafter.

*Committee amendment.*—The committee believes that lump-sum payments should be considered available to meet the ongoing needs of an AFDC family. *The present treatment of such payments has the perverse effect of encouraging the family to spend such income as quickly as possible in order to retain AFDC eligibility.* The committee amendment would require that such income received in a month be considered available as income in the month it is received and also in future months."

S.Rep. No. 139, 97th Cong., 1st Sess. 505, *reprinted in* 1981 U.S.Code Cong. & Ad. News 396, 771 (Budget Committee Report) (emphasis added).

According to an affidavit filed by the federal official with overall responsibility for the AFDC program, only seven per cent of the AFDC caseload has earned income. Under plaintiff's interpretation of the statute, the "perverse effect" identified by the Senate Budget Committee would remain for 93 per cent of AFDC families (those without earned income).

Given the explicitly stated desire to promote budgeting of lump-sum income by AFDC recipients, we are reluctant to adopt plaintiffs' interpretation absent any explicit indication in the statute or its legislative history that Congress intended to draw a distinction in this context between AFDC families with and without earned income. Neither the Senate Budget Committee Report nor the House Conference Report contains any reference that would limit application of the lump-sum rule on the basis of earned income. In addition to the material quoted above, the Senate Budget Committee Report states: "The [lump-sum rule] would require that large payments, together with other income remaining after the application of disregards, be considered available to meet ongoing needs in the AFDC program." *Id.* at 702. The House Conference Report states:

"For purposes of AFDC, income received in a month must be considered available as income in the month it is received and also in future months. Thus, if such income exceeded the standard of need in the month[ ] of receipt, the family would be ineligible in that month. In addition, any amount of the income that exceeds the initial month's needs standard would be divided by the monthly needs standard, and the family would be ineligible for aid for the number of months resulting from that calculation." H.Conf.Rep. No. 208, 97th Cong., 1st Sess. 979, *re-*

*printed in* 1981 U.S.Code Cong. & Ad. News 1010, 1341.[10]

The district court, however, found support in the legislative history for the conclusion that the lump-sum rule applies only to AFDC families with earned income. The court focused on a portion of the Senate Report, which stated that "large payments, *together with other income remaining after the application of disregards*, be considered available to meet the ongoing needs in the AFDC program". 560 F.Supp. at 1125 (quoting S.Rep. 139, 97th Cong., 1st Sess. 436, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 702) (district court's emphasis). It concluded from the highlighted excerpt that "Congress intended the 'lump-sum' policy to apply only to persons who have 'other income'" and that the term, "other income remaining after the application of disregards", can only refer to earned income, because the only statutory references to "disregards" apply to earned income disregards. 42 U.S.C. § 602(a)(8).

We do not share the district court's reading of this excerpt. We believe that the emphasized language, coming in the Senate Budget Committee Report beneath the rubric, "Count lump-sum payments", refers to the *method* for computing a family's AFDC entitlement. The language does not, either on its face or by implication, limit the scope of the rule to AFDC recipients with earned income. The Budget Committee more likely meant to explain that the ineligibility period caused by receipt of lump-sum income should be calculated by adding lump-sum income to other income, *if any exists*, but only after the application of earned income disregards.

The cost-savings estimate in the legislative history provides further support for defendants' interpretation of the scope of the lump-sum rule. The Senate Report estimated that the new lump-sum rule would save $5 million annually. S.Rep. No. 139, 97th Cong., 1st Sess. 505, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 771. In describing the basis for this estimate, the Report explained that the lump-sum rule "would require states to consider *all* lump-sum payments as income available to meet *a family's needs*". S.Rep. No. 139, 1981 U.S.Code Cong. & Ad.News at 820 (emphasis added). The cost-saving estimates were based on AFDC caseload figures presented to Congress by HHS, which had assumed that the amended lump-sum rule would apply to the entire AFDC caseload, not only to AFDC families with earned income. Given the HHS estimate that only seven per cent of AFDC families have earned income, application of the lump-sum rule only to families with earned income would reduce cost savings from $5 million to $350,000 (7% of $5 million). The $5 million cost-saving estimate on which Congress relied bolsters our view that Congress intended the lump-sum rule to apply to all AFDC families. *Cf. Dickenson v. Petit*, 692 F.2d 177, 181 (1st Cir.1982) (determining legislative intent behind OBRA by examining HHS cost-saving estimates).

█ In addition, the absence of any explicit language in the statute or its legislative history that the lump-sum rule applies only to AFDC families with earned income takes on heightened significance in light of the universal application of the lump-sum rule prior to OBRA. If Congress had intended to narrow the scope of the rule from all AFDC families to only seven per cent of AFDC families (those with earned

---

**10.** In testimony before the Senate Finance Committee and a subcommittee of the House Ways and Means Committee, Richard S. Schweiker, then-Secretary of Health and Human Services, the agency that proposed the lump-sum rule, made no distinctions on the basis of earned income. *See Spending Reduction Proposals: Hearings Before the Senate Comm. on Finance,* *Pt. 1,* 97th Cong., 1st Sess. 18, 33 (March 17, 1981) (statement of Richard S. Schweiker); *Administration's Proposed Savings in Unemployment Compensation, Public Assistance, and Social Services Programs: Hearings before the Subcomm. on Public Assistance and Unemployment Compensation of the House Comm. on Ways and*

income), it probably would have made such intent more clearly known.[11]

The district court also noted that limiting the brunt of the lump-sum rule to families with earned income would further the congressional design of allocating scarce resources to benefit the most needy. The court reasoned that families with earned income have demonstrated the capability for employment and are more likely to be able to meet at least some of their living expenses with earned income during the period of ineligibility brought on by receipt of a lump-sum payment. 560 F.Supp. at 1125.

We do not join the district court's analysis. First, whether a family has earned income in the month in which it receives a lump-sum payment is but a haphazard indicator of that family's ability to support itself. As the district court recognized, families with earned income who are still eligible for AFDC are, by definition, still needy. A family with one working member holding a low-paying part-time job may have little greater ability to support itself than a family none of whose members worked in the month of receipt of the lump sum. Second, and more important, even if the district court's reading of the lump-sum rule had substantial support from policy considerations, we nonetheless fail to see any indication in the legislative history that Congress amended the treatment of lump-sum income with those policy considerations in mind. *See Clark v. Harder,* 577 F.Supp. at 1088. Absent any evidence that the OBRA Congress shared the district court's view of sound AFDC policy, the district court's policy analysis, however plausible, does not further our attempt to discover legislative intent.

### III. Administrative Interpretation

■ Given the circumstances surrounding the adoption of the lump-sum rule, the district court failed to give appropriate deference to HHS's interpretation, before and after OBRA's passage, that the new lump-sum rule applied to all AFDC families. The HHS regulation applies the lump-sum rule to the "AFDC assistance unit's income, after applying applicable disregards". 45 C.F.R. § 233.20(a)(3)(ii)(D). The regulation clearly includes all AFDC families within its scope.

"We must respect Health and Human Services' interpretation of its own governing statute—assuming such to be Congress's intent where the legal issue is minor, interstitial, and imbued with administrative complexity." *Drysdale v. Spirito,* 689 F.2d at 261 (citing cases). Such deference is especially appropriate where, as here, the agency played a role in drafting the statute. *See Zuber v. Allen,* 396 U.S. 168, 192, 90 S.Ct. 314, 327, 24 L.Ed.2d 345 (1969). The respect given to HHS's expertise and familiarity with the statutory terms it proposed in *Drysdale* seems fully applicable to our present inquiry. In *Drysdale,* we had to decide whether the earned income disregards of 42 U.S.C. § 602(a)(8) —a primary battleground in the instant litigation—apply to nonneedy caretaker parents. We now face a similar species of statute for which the question of construction "is minor, interstitial, and imbued with administrative complexity".

In light of the statute's language and legislative history, we find HHS's interpretation of the scope of the lump-sum rule to be fully consonant with legislative intent. HHS's interpretation therefore properly in-

*Means,* 97th Cong., 1st Sess. 7–8, 12 (March 11, 1981) (statement of Richard S. Schweiker).

**11.** We need not, and do not, rely on defendants' argument that limiting the impact of the lump-sum rule to AFDC families with earned income would create a disincentive to work and that Congress could not have intended to give windfall treatment of lump-sum income only to families without earned income. Although other portions of the AFDC statutory scheme reveal a congressional intent to provide work incentives,

*see, e.g.,* 42 U.S.C. § 602(a)(8)(A)(iii) (earned income disregard for certain child care expenditures); *id.* § 602(a)(19)(A) (requiring certain AFDC recipients to register for various federal employment programs), OBRA clearly placed cost-cutting ahead of the previously oft-enunciated goal of minimizing work disincentives. *See Dickenson v. Petit,* 728 F.2d 23, 24 (1st Cir.1984); *James v. O'Bannon,* 715 F.2d 794, 809–10 (3d Cir.1983).

fluences our statutory construction. Congress sought to eliminate the "perverse effect" of the former lump-sum rule, which created no incentive for AFDC families to budget lump-sum income. We have found no indication in the legislative history that Congress intended to eliminate this "perverse effect" for only that small portion of the AFDC population with earned income. HHS's interpretation also comports with congressional cost-saving estimates (derived from HHS assumptions and calculations) and with prior practice regarding the scope of the lump-sum rule.

### IV. Exception for Life-Threatening Situations

■ The facts underlying this case reveal stark examples of the harsh impact of the lump-sum rule. The district court has already chronicled the hardships suffered by three of the plaintiffs. 560 F.Supp. at 1120–22.[12] 45 C.F.R. § 233.20(a)(3)(ii)(D) states:

> "A state *may* shorten the period of ineligibility where it finds that a life-threatening circumstance exists, and the non-recurring income causing the period of ineligibility has been or will be expended in connection with the life-threatening circumstance. Further, until that time the non-recurring income must have been used to meet essential needs and currently the assistance unit must have no other income or resources sufficient to meet the life-threatening circumstance." (Emphasis added).

The Rhode Island regulation setting out the lump-sum rule includes nearly identical language. Social and Rehabilitative Services Manual § 207, pp. 25–26. In a dire situation that fit the regulatory criteria, we have no reason to doubt that the state officials would exercise their discretion to fulfill the paramount statutory purpose of providing the means for maintaining parental care and protection of children in needy families. 42 U.S.C. § 601.

*The decision of the district court is reversed. Parties to bear their own costs on appeal.*

---

12. The district court subsequently certified the plaintiff class. Given that the Rhode Island standard of need represented only 59% of the federal poverty line at the time of the district court's preliminary injunction, 560 F.Supp. at 1125, we have no reason to believe that the scenarios of penury described by the district court are atypical.