**Dorothy DAVIS, on behalf of herself, her grandchildren, Marvelle and Pirre Harris; Valeria Lewis, on behalf of herself, her minor children, Layton, Dennis, and Monyon Lewis; and, on behalf of all others similarly situated, Plaintiffs,**

v.

**Gregory COLER, Director, Illinois Department of Public Aid, in his official capacity; and, Margaret Heckler, Secretary, United States Department of Health and Human Services, in her official capacity, Defendants.**

No. 83 C 6885.

United States District Court,
N.D. Illinois, E.D.

Dec. 26, 1984.

Beverly Groudine, Legal Assistance Foundation, Barbara Stob, Legal Assistance Foundation, Thomas Johnson, Uptown Peoples Law Center, Chicago, Ill., for plaintiffs.

Linda Wawzenski, Asst. U.S. Atty., Steven Hogroian, James O'Connell, Owen Field, Sp. Asst. Atty. Gens., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This case is before the court for rulings on several pending motions. The motions addressed today concern only Counts I and III of the amended complaint. By agreement of the court and the parties, any motions concerning Count II will be addressed only after Count I has been resolved. Because of the number of motions involved, the court will address each motion in the following sequence: (1) plaintiffs' motion to amend their complaint to

add Count III; (2) motions addressed to Count I: defendants' motion for summary judgment, plaintiffs' motions for injunctive relief, a class action, and notice to class members of their right to retroactive AFDC benefits; (3) motions addressed to Count III: defendants' motion for summary judgment on Count III, plaintiffs' motion for a preliminary injunction and to maintain Count III as a class action.

### (1) *Motion to File an Amended Complaint*

■ The plaintiffs filed the original complaint in this case in September 1983. Count I sought declaratory and injunctive relief to secure plaintiffs' rights under Title IV–A of the Social Security Act. Plaintiffs asserted that defendants promulgated regulations which violated 42 U.S.C. section 602(a)(17). Section 602(a)(17), the lump sum rule, states that "person(s) specified in paragraph 8(A)(i) or (ii) of the statute" become disqualified for benefits as a result of receiving lump sum payments of money.[1] This lump sum disqualification rule requires that when an Aid to Families with Dependent Children (AFDC) recipient receives a non-recurring lump sum payment, that payment renders the person ineligible for monthly benefits for a length of time calculated by the benefits usually received and the amount of the lump sum payment. The plaintiffs alleged that the defendants promulgated regulations, 45 C.F.R. section 233.30(a)(3)(ii)(D) and Illinois Department of Public Aid (IDPA) AFDC Manual §§ PO and PR 510.2(g) and 615.6, which violate section 602(a)(17) by applying the lump sum disqualification to persons outside the specified scope of paragraph 8(A)(i) or (ii).[2] Count I and the briefs surrounding it focused squarely upon the proper interpretation of who is a person specified in those paragraphs and what type of income does that person receive. Plaintiffs interpreted the persons in the paragraphs to be those who receive earned income in the same month in which they receive the lump sum payment. Defendants asserted that persons who receive *any* income, earned or unearned, in that same month are subject to the lump sum disqualification.

On June 22, 1984, Congress amended this disputed provision. Deficit Reduction Act of 1984, § 2632(b)(1) H.R.Rep. No. 98–861, 98th Cir. Cong.2d Sess. 678–679, U.S.Code Cong. & Admin.News 1984, ——, 130 Cong. Rec. H6369, H6554. [hereinafter DRA].

---

1. The Omnibus Budget Reconciliation Act of 1981 (OBRA) amended 42 U.S.C. § 602(a)(17) to require state AFDC plans to:

   (17) provide that if a person specified in paragraph (8)(A)(i) or (ii) receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

   (A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and

   (B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A).

2. 42 U.S.C. § 602(a)(8)(A)(i) and (ii) require a state AFDC plan to:

   (8)(A) provides that, with respect to any month, in making the determination under paragraph (7), the State agency—

   (i) shall disregard all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or a part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment;

   (ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month).

The amendment removed the language of section 602(a)(17) which had formed the focus for the dispute in Count I. Originally, the lump sum disqualification applied to "a person specified in paragraph 8(A)d (i) or (ii)." New language was substituted for that phrase, which now reads that the lump sum disqualification applies to: "a child or relative applying for or receiving aid to families with dependent children, or any other person whose need the state considers when determining the income of a family." This new language took effect on October 1, 1984. The plaintiffs contend that this amendment is not a mere clarification, but a change in the previously existing law. The defendants assert that the amendment is a clarification of what was previously ambiguous statutory language.

After Congress acted in June, the plaintiffs moved this court, on August 9, 1984, for leave to file an amended complaint. This motion came eleven months after the original filing, and seeks to add a new party plaintiff, the Velez family, and to add an additional claim, Count III. Count III alleges that plaintiffs' recovery of money damages from a personal injury claim is properly characterized as a "resource" and, therefore, not subject to the lump sum disqualification. Defendants oppose the amendment and argue that all lump sum payments of any type are subject to lump sum disqualification.

■ The motion to amend the complaint is made pursuant to Federal Rules of Civil Procedure 15, 18(a), and 20. Rule 15 provides that pleadings may be amended "once as a matter of course" when the opposing party has not yet served a responsive pleading. Where a responsive pleading has been served, the party seeking to amend must obtain the written consent of the opposing party or leave of court. In this case, the State defendant filed an answer to the complaint November 21, 1983 and the federal defendant answered on November 30, 1983. Therefore, leave to amend the complaint is squarely within the discretion of this court.

■ Rule 15(a) further provides that leave to amend "shall be freely given when justice so requires." In examining a motion for leave to amend the pleadings, the court considers the controlling facts of each particular case. The factors generally used include: evidence of bad faith or an effort to create undue delay; substantial prejudice to the opposing party; the amount of time expired since the original pleadings; and whether the amendment alters the nature and scope of the action and accompanying discovery. *Murphy v. White Hen Pantry Co.,* 691 F.2d 350 (7th Cir.1982); *Gregg Communications Systems, Inc. v. American Tel. & Tel. Co.,* 98 F.R.D. 715 (N.D.Ill.1983). Considerations under Rule 18(a) and 20 are similar, but also require that the new claim arise out of the same subject matter and facts as the original and that joinder of a claim or a party will avoid a multiplicity of suits on similar issues. *Resnick v. American Dental Ass'n,* 90 F.R.D. 530 (N.D.Ill.1981); *Goodman v. H. Hentz & Co.,* 265 F.Supp. 440 (N.D.Ill.1967).

■ In this case, plaintiffs seek to join an additional party plaintiff and an additional count. The defendants do not appear to oppose the additional party, but focus upon the third count. The defendants argue that (1) plaintiffs have not justified their delay in bringing the third count; (2) plaintiffs' position under Count III is "erroneous;" and (3) "no legitimate purpose" will be served by allowing plaintiffs to amend the complaint. Defendants' arguments do not persuade the court that the motion to amend should not be granted. To do so, the defendants would need to show substantial prejudice to themselves or bad faith and undue delay on the plaintiffs' part. First, plaintiffs' delay in filing the third count is not, in itself, determinative where there is no evidence of bad faith in that delay. *Gregg Communications Systems, Inc. v. American Tel. & Tel. Co.,* 98 F.R.D. at 721. Second, the merits of the plaintiffs' amended claim is not under consideration unless the claim is frivolous, meritless, or futile. At this time, plaintiffs' claim is legally sufficient. *Hale v. Morgan*

*Packing Co.,* 91 F.Supp. 11 (N.D.Ill.1950). Third, the defendants assert that no legitimate purpose will be served by allowing the third count to stand. However, at least one legitimate purpose, to avoid a separate action on this single statutory provision, will be served.

■ Therefore, the court finds plaintiffs' motion to amend its complaint should be granted because it is brought in good faith, will not unduly prejudice the defendants, is legally sufficient, and is related in law and fact to the earlier counts.

### (2) *Count I Motions*

■ The court has before it both defendants' motions for summary judgment on Count I of the amended complaint. Summary judgment is appropriate where there are no material disputed issues of fact and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Collins v. American Optometric Ass'n,* 693 F.2d 636 (7th Cir.1982). In this case, there are no issues of material fact in dispute. The question before the court is one of law— the proper legal interpretation of the application of the lump sum provision, 42 U.S.C. § 602(a)(17). In essence, however, this issue creates two inquiries: the Congressional intent and proper reading of section 602(a)(17) when created in 1981 and the effect of the 1984 amendment to the provision's original meaning.

The parties integrate these two aspects to fortify their opposing interpretations. First, the plaintiffs urge the court to disregard district court and Courts of Appeals decisions which have already addressed the proper interpretation of the 1981 lump sum rule.[3] Plaintiffs assert these decisions are not persuasive because they were made without the benefit and insight of the 1984 amendments, which plaintiffs argue affirm their original interpretation. Second, plaintiffs argue that the 1984 amendment creates a clear change in the law, not a mere clarification of the earlier provision. Under the plaintiffs' view, the original provision applied only to those AFDC recipients who also worked or received earned income. These individuals comprise seven per cent of all AFDC recipients. Both parties agree that after the 1984 amendments, the lump sum rule applies to all AFDC recipients. Finally, the plaintiffs discount the post-enactment statements of Senator Dole and Representative Rostenkowski.[4] Their statements describe the amendment as a clarification of the lump sum rule and declare that the original intent of the rule was to apply it to all AFDC recipients. Plaintiffs assert there is no contemporaneous legislative history to lend validity to these views. Therefore, such statements are alleged to be simply reflections of those individuals' views.

The meaning of the 1981 lump sum rule is key. The 1984 amendment "dooms" plaintiffs' recovery after October 1, 1984.

---

**3.** *See, e.g., Walker v. Adams,* 741 F.2d 116 (6th Cir.1984); *Faught v. Heckler,* 736 F.2d 1235 (8th Cir.1984); *Sweeney v. Murray,* 732 F.2d 1022, (1st Cir.1984); *Reed v. Lukhard,* 591 F.Supp. 1247 (W.D.Va.1984) (presently on appeal by defendant) *Atkins v. Toan,* 595 F.Supp. 104 (W.D. Mo.1984); *Poulin v. Chevrefils,* Civ. No. 83–486–D (D.N.H. May 3, 1984); *Woodruff v. Perales,* Civ. No. 82–1141C (W.D.N.Y. April 25, 1984); *David v. Sunn,* Civ. No. 84–0016 (D.Ha. March 5, 1984) (in court ruling); *Wylie v. Kitchin,* 589 F.Supp. 505 (N.D.N.Y.1984); *Betson v. Cohen,* 587 F.Supp. 121 (E.D.La.1983) (West publishers replaced the 578 F.Supp. 154 with this citation); *Harris v. Harris,* 576 F.Supp. 915 (D.N.J.1983); *Callejas v. McMahon,* C–83–3136 EFL (N.D.Ca. Sept. 2, 1983); *Douthit v. Heckler,* 577 F.Supp. 88 (D.Neb.1983); *Clark v. Harder,* 577 F.Supp. 1085 (D.Kan.1983); *Bowmaster v. Petit,* 576 F.Supp. 354 (D.Me.1983); *Vermeulen*

*v. Kheder,* No. 82–135 (W.D.Mich. June 3, 1982) (in court ruling).

**4.** Representative Dan Rostenskowski and Senator Robert Dole made identical statements three weeks after the DRA was enacted:

· [S]ubsection [2632](b), however, is intended merely to clarify the original intent of the Congress as to the applicability of the lump sum provision. That provision has been interpreted by some courts to apply only to AFDC families having earned income at the time they receive a lump-sum payment. The amendments made by section 2632(b) of the [DRA] are intended to clarify that this provision was always intended to apply to all families, not just those with earned income. 130 Cong.Rec. E 3590 (daily ed. August 10, 1984).

Therefore, the amendment will, of course, lend meaning to the original provision, but the words and legislative history of the 1981 provision are primary to the court's decision. The case law preceding the 1984 amendment is certainly relevant to this discussion because Congress would be aware of the legal disputes and the administrative interpretations surrounding the original provision when determining to amend it.

■ Since 1981, section 602(a)(17) has generated many district court cases and three Circuit Court cases. The majority of the case law has favored the defendants' interpretation, but has found the language of the provision itself ambiguous, or capable of two meanings. *See, e.g., Sweeney v. Murray*, 732 F.2d 1022 (1st Cir.1984). The court agrees that the plain language of the provision is the starting point of any statutory interpretation. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). After careful consideration, this court finds the language of section 602(a)(17), as it read in 1981, was capable of supporting two different interpretations. It could have applied only to those AFDC recipients who had earned income in that month because of the use of that term in the scope sections of 602(a)(8)(A)(i) or (ii). Alternatively, the language could be viewed as describing those groups of AFDC recipients subject to the lump sum rule and the treatment to be afforded the earned income, if there *were* any earned income, which could be disregarded in making a determination under section 602(a)(17). Either reading is possible, but both are awkward.

■ The language of the 1981 lump sum rule was ambiguous and the use of legislative history to interpret it is proper. When Congress created the rule in 1981, the Congressional committee reports indicated two major goals to be met by the legislation. First, Congress sought to revise the effect of pre-OBRA law's treatment of lump sums, which had the unfortunate result of encouraging a family to spend such income as quickly as possible in order to retain AFDC eligibility. S.Rep. 139, 97th Cong., 1st Sess. 505, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 771 (Budget Committee Report).[5] Second, Congress sought to reduce AFDC expenditures by applying the lump sum rule and making certain recipients ineligible as a result. *Id.* Therefore, as the lump sum rule existed in 1981, its language was ambiguous, but the committee reports made its purposes clear.

The defendants' interpretation of the statute furthers the goals of Congress and effectuates its intent. Their interpretation applies the rule to the full one hundred percent rather than the seven percent of recipients with earned income. This broad application furthers both stated goals—to eliminate the disincentive of the old rule and to reduce overall AFDC expenditures. Therefore, the language of the 1981 provision read with its legislative history supports defendants' interpretation and the regulations promulgated pursuant to that interpretation.

The 1984 amendment changed the disputed language in the lump sum rule which had defined the scope of its application. Plaintiffs view this amendment as a clear change—one which expands the previous narrow scope of the rule to now include all

---

**5.** The Senate Report explains the primary rationale for the amended lump-sum rule:

Present Law.—Any payments that meet the definition of income—for example, retroactive social security benefits—are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered as a resource in the months thereafter.

Committee amendment.—The committee believes that lump-sum payments should be considered available to meet the ongoing needs of an AFDC family. The present treatment of such payments has the perverse effect of encouraging the family to spend such income as quickly as possible in order *to* retain AFDC eligibility. The committee amendment would require that such income received in a month be considered available as income in the month it is received and also in future months. S.Rep. No. 139, 97th Cong., 1st Sess. 505, *reprinted in* 1981 U.S.Code Cong. & Ad. News 296, 771 (Budget Committee Report).

AFDC recipients. To support this view, plaintiffs present evidence that contemporaneous amendments in the DRA, such as section 2625, were labeled clarifications, while Section 2632 was not; that the change in the wording is too marked to be considered merely a clarification; that there is no contemporaneous legislative history; and, finally, that post-enactment statement where no other history is present are without authority and reflect only a personal view of the legislators.

The court is not persuaded that the 1984 amendment made the large change in scope of the lump sum rule which plaintiffs perceive. As the earlier analysis showed, the 1981 language itself was capable of referring to all AFDC recipients and the amendment's language *does* refer to all AFDC recipients as the proper scope. The amendment, although not labeled a clarification, does clarify the disputed language and reach the interpretation mandated by the legislative history of the 1981 provision. The amendment resolved the series of court cases and is applied prospectively. Therefore, in substance, if not in form, the 1984 amendment is a clarification.

The plaintiffs correctly state that there is no contemporaneous legislative history to accompany the 1984 amendment. Therefore, the sponsors' statements should be afforded little weight. However, the language of the 1984 amendment itself and its context in the history of the 1981 provision provide a sufficient basis for the court's interpretation. The language of the amendment is sufficient to form a statutory interpretation of it as a clarification without reference to legislative history. Indeed, the lack of legislative history may even undermine plaintiffs' position. If such a major change were intended, a change of scope from seven to one hundred percent of the AFDC recipients, Congress would be likely to comment upon such an action.

For the foregoing reasons, the defendants are entitled to judgment as a matter of law on Count I of the amended complaint.

### Count III Motions

Count III of the amended complaint is a class action for declaratory and injunctive relief. The named plaintiffs represent those families which have been denied AFDC assistance solely because a family member received a lump sum payment of compensation for a personal injury. The plaintiffs have moved the court for a preliminary injunction and for class certification. The defendants seek summary judgment on this issue. Once again, there are no material disputed questions of fact and the question before the court is whether the defendants are entitled to judgment as a matter of law. Although the provision at issue is not one of great clarity, for the reasons which follow, the court concludes that the defendants are entitled to judgment as a matter of law.

The State defendant, IDPA, has promulgated regulations which apply the lump sum rule, section 602(a)(17), to families receiving personal injury awards, which the State views as income. IDPA AFDC Manual §§ PO and PR 510.2(g) and 615.6. The State has this power as a result of the Federal defendant's current policy which permits the States the option of treating nonrecurring or "windfall" lump sum payments as income or as resources. The Secretary of Health and Human Services is presently revising the guidelines which permit the States this flexibility. New regulations will require that all states treat all "windfall" lump sum payments as income and subject to the lump sum rule. Reply Memorandum of Federal Defendant for Summary Judgment on Count III, at 5. Plaintiffs assert that the lump sum rule was intended to be applied solely to income. They argue that compensation for personal injury is properly viewed not as income, but as a resource and, therefore, not subject to the lump sum rule.

The court's role in the review of agency action and interpretation of statutes is narrow. Agency action is presumed to be valid and the court is not to replace the agency's judgment with its own. *Bat-*

terton v. Francis, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Therefore, this court may reject the defendants' interpretation and application of the lump sum rule to personal injury settlements only if the interpretation proposed is without a reasonable basis. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Connor v. Finch,* 314 F.Supp. 364, 369 (N.D.Ill.1970). After a careful review of the agency action, the court finds there is some reasonable basis for the application of the lump sum rule to families which receive lump sum payments to compensate personal injuries.

In this determination, the court does not write upon a clean slate. Both parties have cited district court opinions which they use to affirm their respective positions. *Jackson v. Guissinger,* 589 F.Supp. 1288 (W.D. La.1984) (upholding application of the lump sum rule to personal injury awards as an option available to the States); *Reed v. Lukhard,* 591 F.Supp. 1247 (W.D.Va.1984) (finding the lump sum rule applies solely to income and personal injury awards do not qualify as income); *Betson v. Cohen,* 587 F.Supp. 121 (E.D.La.1983) (concluding that personal injury awards are not expressly excluded from the lump sum rule and, therefore, may be included). The courts have split over the characterization of personal injury awards because two interpretations are not simply semantical differences without effect. If a personal injury award is treated as income and subject to the lump sum rule, the person and family are disqualified for benefits for a certain number of months or even years. 42 U.S.C. § 602(a)(17). If a personal injury award is treated as a personal resource, the recipient of the award is ineligible for benefits only as long as the total unexcluded resources, including the award, exceed one thousand dollars. When the excess is gone, the recipient is again eligible for benefits.

The court's focus in resolving this issue is upon Congress' intent in enacting the lump sum rule: did Congress intend to include the large amounts of lump sum payments of personal injury awards within the operation of the lump sum rule? The language of the rule itself, its legislative history, and the administrative interpretation given the rule are all essential to this inquiry. The language of the rule uses the term income throughout it. Federal regulations promulgated pursuant to it provide that the rule shall apply to recipients of "nonrecurring lump sum income." 45 C.F.R. § 233.20(a)(3)(iii)(D). The statute, however, fails to provide any express definition of income. Neither party disputes that the term income is key in the rule, but both offer definitions of the term which support their interpretation.

Plaintiffs rely upon the ordinary, dictionary definition of the term and argue that the plain meaning of the term requires the agency to classify a personal injury award as a resource, not as income. The Internal Revenue Code is also used to supply a definition for income. The court is neither required to disregard the definition from another statute, nor accept it as the one intended by Congress in another statute. In this context, the court is not persuaded that the best source of a definition for income lies outside the AFDC provisions and regulations themselves. Although not defined in the AFDC provisions, the term's use in the lump sum rule is best understood within the rule and its legislative history and administrative interpretation.

The defendants argue that the dictionary and Internal Revenue Code cannot provide a definition for the term income as it is employed by Congress in the lump sum rule. They reason that the Secretary of Health and Human Service has the broad discretion to define such terms. The Secretary may, in certain contexts, permit the participating States to define particular terms. The Secretary's interpretation of the lump sum rule permitted the States the option to determine if "windfall" or nonrecurring lump sum payments were income or a resource. Therefore, the States, such as Illinois, would be free to include person-

al injury awards as income within the lump sum rule.

The legislative history of the lump sum rule sheds some light on the lack of definition for the term income. In 1981, Congress focused upon the "perverse effect" of the existing rule, which encouraged families to spend a lump sum quickly, within the first month of receipt, and then have the remainder treated as a resource, rather than income available to meet ongoing needs. *See* fn. 6, *infra.* This legislative history reveals the purpose of the rule, but also demonstrates the flexibility associated with the definitions of the terms income and resource. Under the old rule, a payment would enter the household as income, but within a month, be transformed into a resource. The terms were and are flexible and capable of changing meaning as the rules they are used in change. Congress and the Secretary left the terms flexible to effectuate the purposes and goals of the AFDC program.

Because of the lack of definitions, both parties' readings of the lump sum rule and the definition of income are reasonable, although neither is wholly satisfactory. Plaintiffs read the term and rule narrowly and without flexibility. Defendants look to the broad purpose of the rule and the flexible nature of the terms. While either may be reasonable, the purpose of the amendment and the deference to be afforded the agency's interpretation dictate that defendants' view prevail. Under defendants' view the disincentive would most effectively be eliminated. Otherwise, recipients of large "windfall" lump sum payments would remain encouraged to spend the money as quickly as possible to reach the one thousand dollar resource level. This would not encourage families to pro-rate or budget out their monies in the months ahead.[6]

---

**6.** The Secretary of HHS emphasized that the purpose of the lump sum was to assure that only families with no other income would be eligible for AFDC. He also emphasized that the lump sum rule was designed to promote individual budgeting responsibility.

> Our next set of proposals is aimed at assuring that the AFDC program is available only as a temporary program to assist families with children who have no other means of support. Before the first dollar of aid is paid, all other sources of income should be pursued and all available income counted....

We are also introducing proposals to insure that people assume more personal responsibility for planning the use of income to meet their needs. When a large amount of money is received as a lump sum—for example, an inheritance—we will consider it as income available for support not only in the month it is received, but to meet future needs....
*Emphasizing individual responsibility*
We are also introducing proposals to ensure that people assume more personal responsibility for planning the use of income to meet their needs. When a large amount of money is received as a lump sum (for example, an inheritance), we will consider it as income available for support not only in the month it is received but to meet future needs. This would be accomplished by requiring that the lump-sum payment be divided by the State's standard of need. The recipient would be ineligible for assistance for the number of months that result from that computation. Prepared statement of the Secretary, Senate Committee on Finance, "Spending Reduction Proposals" Part 1 97–1 March 18, 18, 19, 24, 25, 1981 398 p.

The House Committee's description of the then-proposed lump sum rule required the States to consider lump sum payments as income. This is the interpretation currently used in the Secretary's proposed regulations which will deny States the option to treat lump sums as either income or a resource.

> *AFDC Proposal 13: Averaging unearned income received as a lump-sum payment.*
> *Background:*
> According to DHHS, lump-sum payments that meet the definition of income, such as retroactive Social Security payments, now are counted as income in the month when received, and if an excess remains, as resources thereafter.
> *Proposed Change:*
> Require States to consider all lump-sum payments as income available to meet a family needs. The household would be ineligible for AFDC if a lump-sum payment exceeded the standard of need. Any excess sum in the month when received would be carried forward for alter use.
> *Impact:*
> DHHS estimates that the proposal would remove 5,000 families from AFDC reducing Federal AFDC benefit outlays by $5 million in FY82 and yielding negligible administrative savings. However, it would boost food stamp benefits by an estimated $2 million. Thus, net saving would be $3 million. Staff of House Committee on Ways and Means, 97th Cong., 1st Sess., "Description of the Administration's Legislative Recommendations Under Jurisdiction of the

Therefore, the court concludes that defendants are entitled to judgment as a matter of law on the claim presented in Count III of the amended complaint. Because the court has found for the defendants, plaintiffs are not entitled to the injunctive relief sought, nor to a decision on the issue of class certification.

Ways and Means Committee" III, 53 (Comm. Print 1981).