June 10, 1993 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1764

 JENNA SKIDGEL, ET AL.,
 Plaintiff, Appellee,

 v.

 MAINE DEPARTMENT OF HUMAN SERVICES,
 Defendant, Appellee.

 v.

 LOUIS W. SULLIVAN,
 Defendant, Appelllant.

No. 92-1824

 JENNA SKIDGEL, ET AL.,
 Plaintiffs, Appellees,

 v.

 MAINE DEPARTMENT OF HUMAN SERVICES
 ROLLIN IVES,
 Defendants, Appellants.
 

 ERRATA SHEET

 The opinion of this court issued on June 3, 1993, is amended

as follows:

 Page 5, footnote 5, line 5: Change "principle" to
"principal".

 Page 6, footnote 7, line 2: Change "principle" to
"principal".

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-1764 
 JENNA SKIDGEL, ET AL.,
 Plaintiff, Appellee,

 v.

 MAINE DEPARTMENT OF HUMAN SERVICES,
 Defendant, Appellee.

 v.

 LOUIS W. SULLIVAN,
 Defendant, Appellant.

No. 92-1824

 JENNA SKIDGEL, ET AL.,
 Plaintiffs, Appellees,

 v.

 MAINE DEPARTMENT OF HUMAN SERVICES
 ROLLIN IVES,
 Defendants, Appellants.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE
 

 [Hon. Brock Hornby, U.S. District Judge]
 
 

 Before
 Torruella, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Stahl, Circuit Judge.
 
 

Marina E. Thibeau, Assistant Attorney General, and Michael E.
 
Carpenter, Attorney General, on brief for defendant-appellant Rollin
 
Ives, Commissioner, Maine Department of Human Services.
John F. Daly, Appellate Staff, Civil Division, Department of
 
Justice, with whom Stuart M. Gerson, Assistant Attorney General, and
 
Richard S. Cohen, United States Attorney, and Robert S. Greenspan,
 
were on brief for third-party defendant-appellant Louis W. Sullivan,
Secretary of Health and Human Services.

Frank D'Alessandro, with whom James Crotteau, Patricia Ender, and
 
Pine Tree Legal Assistance, were on brief for plaintiffs-appellees.
 

 

 June 3, 1993
 

 BOWNES, Senior Circuit Judge. The Secretary of the
 BOWNES, Senior Circuit Judge.
 

Department of Health and Human Services (HHS) and the Maine

Department of Human Services (DHS) appeal a decision of the

district court invalidating and enjoining the enforcement of

certain regulations and policies regarding Aid to Families

with Dependent Children (AFDC), upon finding that they

conflicted with the plain language of the Social Security

Act, 42 U.S.C. 601 et seq. 
 

 At issue is the application of two distinct

provisions of the Social Security Act, 42 U.S.C. 

602(a)(38), covering the composition of the AFDC filing

unit,1 and 42 U.S.C. 607 (b)(1)(B)(iv), covering the

 

1. 42 U.S.C. 602(a)(38) provides, in pertinent part, that,

 in making the determination under paragraph (7)
 with respect to a dependent child and applying
 paragraph (8), the State agency shall (except as
 otherwise provided in this part) include--

 (A) any parent of such child, and

 (B) any brother or sister of such child, if
 such brother or sister meets the conditions
 described in clauses (1) and (2) of section 606(a)
 of this title or in section 607(a) of this title,

 if such parent, brother, or sister is living in the
 same home as the dependent child, and any income of
 or available for such parent, brother, or sister
 shall be included in making such determination . .
 . [.]

We refer to the AFDC filing unit as the family filing unit,
and to this provision of the statute as the family filing
rule. 

 -2-
 2

deduction of unemployment compensation from an AFDC

payment,2 to a particular situation. That situation occurs

where the principal wage-earner in a two-parent household

becomes unemployed, and the household includes both at least

one child common to the two parents and at least one child

who is the stepchild of the principal earner. The

stepchild[ren] of the principal earner receive AFDC, pursuant

to 42 U.S.C. 606(a), because they are deprived of parental

support due to the continuous absence from the home, death or

incapacity of a parent.3 Prior to the unemployment of the

 

2. 42 U.S.C. 607(b)(1)(B)(iv) provides,

 for the reduction of the aid to families with
 dependent children otherwise payable to any child
 or relative specified in subsection (a) of this
 section by the amount of any unemployment
 compensation that such child's parent described in
 subparagraph (A)(i) receives under an unemployment
 compensation law of a State or of the United States
 . . . [.]

3. 42 U.S.C. 606(a) provides:

 The term "dependent child" means a needy child (1)
 who has been deprived of parental support or care
 by reason of the death, continued absence from the
 home (other than absence occasioned solely by
 reason of the performance of active duty in the
 uniformed services of the United States), or
 physical or mental incapacity of a parent, and who
 is living with his father, mother, grandfather,
 grandmother, brother, sister, stepfather,
 stepmother, stepbrother, stepsister, uncle, aunt,
 first cousin, nephew, or niece, in a place of
 residence maintained by one or more of such
 relatives as his or their own home, and (2) who is
 (A) under the age of eighteen, or (B) at the option
 of the State, under the age of nineteen and a full-
 time student in a secondary school (or in the

 -3-
 3

principal earner, neither the principal earner nor the

child[ren] common to both parents are included in the family

filing unit. 

 Pursuant to HHS/DHS policy and regulations, once

the principal earner becomes unemployed, the family filing

rule requires that the principal earner and the child[ren]

common to both parents be included in the filing unit, as

well.4 Such inclusion is required because the child[ren]

are considered dependent under a separate provision of the

statute, 42 U.S.C. 607(a), due to the unemployment of the

 

 equivalent level of vocational or technical
 training), if, before he attains age nineteen, he
 may reasonably be expected to complete the program
 of such secondary school (or such training)[.]

4. The Secretary's interpretation of the family filing rule
has been embodied in regulations and official transmissions.
See 45 C.F.R. 206.10(a)(1)(vii) which provides, in part,
 
that,

 in order for the family to be eligible, an
 application with respect to a dependent child must
 also include, if living in the same household and
 otherwise eligible for assistance:

 (A) Any natural or adoptive parent, or stepparent
 (in the case of States with laws of general
 applicability); and

 (B) Any blood-related or adoptive brother or
 sister.
 . . .

See also SSA Transmittal 86-1 at 9 (Jan. 12, 1986) (on two-
 
step process whereby application of family filing rule must
precede determination of need).

 -4-
 4

parent who is the principal earner.5 According to the

Secretary's interpretation of the family filing rule, the

common child[ren] now meet "the conditions described in . . .

 607(a)." 42 U.S.C. 602(a)(38). 

 In the case of the plaintiff class,6 the

unemployment compensation received by the principal earner is

then subtracted from the AFDC benefit payable to the newly-

composed family filing unit. Pursuant to 45 C.F.R. 

233.20(a)(3)(ii) (B), unemployment compensation is not

considered as income and does not figure into the calculation

of need, but is deducted from the AFDC payment after the

 

5. 42 U.S.C. 607(a) provides:

 The term "dependent child" shall, notwithstanding
 section 606(a) of this title, include a needy child
 who meets the requirements of section 606(a)(2) of
 this title, who has been deprived of parental
 support or care by reason of the unemployment (as
 determined in accordance with standards prescribed
 by the Secretary) of the parent who is the
 principal earner, and who is living with any of the
 relatives specified in section 606(a)(1) of this
 title in a place of residence maintained by one or
 more of such relatives as his (or their) home. 

6. The class was certified as follows:

 All households in the State of Maine who are
 recipients of AFDC benefits as of November 16,
 1990, or who will apply for AFDC benefits on or
 after November 16, 1990, and whose household
 composition includes at least two adults and two
 children where at least one child is the child of
 one but not both of the adults in the household and
 at least one child is the child of both adults in
 the household and where the adult who is not the
 parent of the first child receives unemployment
 benefits.

 -5-
 5

amount of that payment has been established.7 This special

treatment of unemployment compensation is the Secretary's

interpretation and implementation of 42 U.S.C. 

607(b)(1)(B)(iv). The practical result of the HHS/DHS

policies is a reduction of the AFDC payment going to families

in the plaintiff class.8 

 

7. 45 C.F.R. 233.20(a)(3)(ii)(B) provides:

 In determining financial eligibility and the amount
 of the assistance payment all remaining income
 (except unemployment compensation received by an
 unemployed principal earner) and, except for AFDC,
 all resources may be considered in relation to
 either the State's need standard or the State's
 payment standard. Unemployment compensation
 received by an unemployed principal earner shall be
 considered only by subtracting it from the amount
 of the assistance payment after the payment has
 been determined under the State's payment method[.]

8. The operation of these policies can be illustrated by
taking the case of one of the plaintiffs, Deborah Blake. Ms.
Blake and her husband live with their mutual child, Shawn
Blake, and Ms. Blake's two children, James and Courtney
Morton. While Mr. Blake was employed, the family received
AFDC for Ms. Blake's children, James and Courtney Morton, who
met the definition of dependent children provided in 606(a)
of the statute. At that time, the family filing rule
required that the two dependent children, James and
Courtney, and their parent, Ms. Blake, be included in the
filing unit. The rule did not require the inclusion of
either Shawn Blake, because he was not considered a dependent
child, or Mr. Blake, because he was not the parent of an
AFDC-eligible child. A portion of Mr. Blake's income was,
however, deemed available to the filing unit, pursuant to the
stepparent deeming rule, explained infra Part I, Section A.
 
Before the unemployment of Mr. Blake, the family received
$453.00 each month in AFDC, and Mr. Blake earned $697.00 a
month.
 Once Mr. Blake became unemployed, the family filing rule
required the inclusion of both Shawn (who then met the
definition of a dependent child in 607(a)) and his parent,
Mr. Blake. Because unemployment compensation is disregarded

 -6-
 6

 Plaintiffs brought this action against defendant

Rollin Ives, Commissioner of the Maine Department of Human

Services, arguing that the State was violating federal

statutory standards in determining the amount of AFDC

payments going to members of their class. Ives filed a

third-party complaint against Louis Sullivan, Secretary of

the United States Department of Health and Human Services.

The case went to the district court on a stipulated record. 

 In a memorandum decision, the district court ruled

in favor of the plaintiffs on the grounds that the HHS/DHS

interpretations of both the family filing rule, 42 U.S.C. 

602(a)(38), and the provision regarding unemployment

compensation, 42 U.S.C. 607(b)(1)(B)(iv), impermissibly

conflicted with the plain meaning of the statute. See
 

Skidgel v. Ives, No. 90-0209-B, slip op. (D. Me. Jan. 2,
 

1992) [hereinafter Memorandum Decision]. The district court

read the family filing rule to require that children defined

as dependent under 607(a) be determined financially "needy"

before they could be included in the filing unit. See id. at
 

 

in the determination of need, the new filing unit initially
met the criteria for the maximum AFDC payment for a family of
five, $685.00. Pursuant to regulations interpreting 
607(b)(1)(B) (iv), the State then subtracted the amount of
unemployment compensation received by Mr. Blake, $498.80,
from the maximum AFDC payment of $685.00, to arrive at an
AFDC payment of $186.00. Although the total level of
government income going to the family increased following Mr.
Blake's unemployment, the AFDC payment decreased
considerably.

 -7-
 7

7. The district court also determined that 

607(b)(1)(B)(iv), by its express terms, applies only to

children eligible under 607(a), and does not reach children

eligible under 606(a). See id. at 4-5. On March 23, the
 

court issued a final judgment enjoining the enforcement of

the implicated HHS/DHS policies and regulations. See Skidgel
 

v. Ives, No. 90-0209-B-H, slip op. (D. Me. Mar. 23, 1992)
 

(final judgment).

 Plaintiffs/appellees urge us to affirm the district

court's decision. Defendants/appellants argue that the

district court's reading of 42 U.S.C. 602(a)(38)

contravenes the very purpose of the rule, and draws an

artificial distinction between 606(a) children and 607(a)

children. As a result of the district court's holding,

non-needy children who meet the definition of a dependent

child provided in 607(a) are not compulsorily included in

the family filing unit. By contrast, the weight of federal

authority requires non-needy children who meet the definition

of a dependent child provided in 606(a) to be so included.

See discussion infra Part II, Section A 3. With respect to
 

the district court's reading of 607(b)(1)(B)(iv), it is

defendants' position that the court failed to consider

textual ambiguity and ultimately neglected to reconcile its

reading with the family filing rule, 42 U.S.C. 602(a)(38).

 -8-
 8

For the reasons that follow, we reverse the decision of the

district court.

 I.
 Statutory and Regulatory Scheme 
 Statutory and Regulatory Scheme
 

 AFDC is a cooperative federal-state program

authorized by Title IV-A of the Social Security Act, 42

U.S.C. 601 et seq. The AFDC program provides cash
 

assistance to certain needy families with dependent children.

The program is administered by the states in accordance with

the Social Security Act and the regulations and directives of

the Secretary of HHS. We begin with a brief explanation of

the implicated statutory provisions and the regulations and

policies which implement them. 

A. Determination of Financial Need
 

 In addition to meeting other eligibility

requirements, families receiving AFDC must be financially

needy. The main statutory provision covering need is 42

U.S.C. 602(a)(7), which provides guidelines to state

agencies for assessing the resources available to a family

unit. In the paragraph which follows, 42 U.S.C. 602(a)(8),

Congress sets forth criteria for certain income that may be

disregarded in the determination of need. The family filing

rule, 42 U.S.C. 602(a)(38), establishes the individuals

whose resources must be considered in determining need in

accordance with 42 U.S.C. 602(a)(7) and (8). 

 -9-
 9

 Financial eligibility is determined by comparing a

family unit's countable income (i.e., income remaining after

disregards allowed by law) to the standard of need adopted by

the State. The standard of need is "the amount deemed

necessary by the State to maintain a hypothetical family at a

subsistence level." Shea v. Vialpando, 416 U.S. 251, 253
 

(1974). States assign a standard according to the size of

the unit applying for AFDC. In 1990 in Maine the standard of

need for a family of four was $819.00. An AFDC payment in

Maine is calculated by subtracting a family unit's countable

income, other than unemployment compensation received by a

principal earner, from the standard of need established for

the relevant family size. States are not, however, required

to provide families with the full standard of need. In

Maine, the maximum AFDC payment is a fixed percentage (69.4%)

of the standard of need. Maine permits families to fill the

"gap" between the need standard and the maximum payment

standard without penalty. In other words, families with

countable income below the need standard, but above the level

of payment paid by the State, may still receive the maximum

payment from the State. This gap has practical ramifications

in the instant case because of the operation of the

stepparent deeming rule, codified at 42 U.S.C. 602(a)(31).

In the case of the plaintiff class, prior to the unemployment

of the principal earner the family filing unit did not

 -10-
 10

include either the principal earner or the half-siblings who

were not then dependent children for the purposes of the

statute. See 42 U.S.C. 602(a)(38). A portion of the
 

stepparent's income was, however, "deemed" available to the

unit, pursuant to the stepparent deeming rule. For many in

the plaintiff class, the income deemed available fell within

the gap permitted by the State, so that when the principal

earners were employed, the AFDC benefit to the unit eligible

under 606(a) either was not affected or was only marginally

affected by the deemed income. 

 B. Unemployment Compensation and 607 
 

 The current AFDC statute provides for two

categories of "dependent children": those defined in 

606(a), who are deprived due to the continuous absence, death

or incapacity of a parent, and those defined in 607(a), who

are deprived due to the unemployment of the parent who is the

principal earner. As originally enacted, AFDC was limited to

the category of children defined in 606(a). In the 1960's,

Congress expanded the program to include children deprived

because of a parent's unemployment. At that time, the

so-called AFDC-UP program (unemployed parent, earlier called

AFDC-UF, for unemployed father) was available only to those

families who were not receiving unemployment benefits. See
 

Philbrook v. Glodgett, 421 U.S. 707, 711 (1975). In
 

Philbrook, the Supreme Court decided, in essence, that
 

 -11-
 11

parents had the choice of applying either for unemployment

compensation or for AFDC. See id. at 719. In response to
 

the Philbrook decision, Congress amended the statute to
 

assure that unemployed parents would seek and obtain

unemployment compensation first, and that AFDC payments would

be used only to "supplement UC benefits up to AFDC-UF

levels." See H.R. CONF. REP. NO. 1745, 94th Cong., 2d Sess.
 

28 (1976), reprinted in 1976 U.S.C.C.A.N. 5997, 6048-49. The
 

1976 amendment was the predecessor to the current 

607(b)(1)(B)(iii) and (iv). See Pub. L. No. 94-566, 
 

507(a)(2), 90 Stat. 2688 (1976) (originally codified at 42

U.S.C. 607(b)(2)(C) and (D) (1976)).

C. The Family Filing Rule
 

 Prior to 1984, families applying for AFDC lawfully

could choose to exclude household members from the filing

unit if those members had resources that would reduce the

family's benefit or make the family ineligible for AFDC. In

1983, the Secretary of HHS proposed an amendment "`to

establish uniform rules on the family members who must file

together for AFDC, and the situations in which income must be

counted.'" Bowen v. Gillard, 483 U.S. 587, 592 (1986)
 

(citing Letter of 25 May 1983, to the Honorable George Bush,

President of the Senate). As part of the Deficit Reduction

Act of 1984, Pub. L. No. 98-369, (DEFRA), Congress amended

the AFDC program by adopting the family filing rule. See 98
 

 -12-
 12

Stat. 1145 (1984)(codified, as amended, at 42 U.S.C. 

602(a)(38)). The legislative purpose behind the enactment of

the rule, as reported by the Senate Finance Committee, was as

follows: 

 "`Present Law

 "`There is no requirement in the present law that
 parents and all siblings be included in the AFDC
 filing unit. Families applying for assistance may
 exclude from the filing unit certain family members
 who have income which might reduce the family
 benefit. For example, a family might choose to
 exclude a child who is receiving social security or
 child support payments, if the payments would
 reduce the family's benefits by an amount greater
 than the amount payable on behalf of the child.
 . . .

 "`Explanation of Provision

 "`The provision approved by the Committee would 
 require States to include in the filing unit the
 parents and all dependent minor siblings (except SSI
 recipients and any stepbrothers and stepsisters)
 living with a child who applies for or receives AFDC
 . . . .

 "`This change will end the present practice whereby
 families exclude members with income in order to
 maximize family benefits, and will ensure that the
 income of the family members who live together and
 share expenses is recognized and counted as
 available to the family as a whole.'" 

Bowen, 483 U.S. at 593-94 (quoting from S. Print No. 98-169,
 

980 (1984)). Thus, the amendment sought to compel the

inclusion in the family filing unit of dependent children

living in the same home as the child receiving AFDC. When it

was enacted, the family filing rule required only the

inclusion of 606(a) children, children who were deprived

 -13-
 13

due to the continuous absence, incapacity or death of a

parent. As part of the Tax Reform Act of 1986, Congress

amended 602(a)(38) to include children who meet the

conditions described in 607(a). See 100 Stat. 2085, 2917
 

(1986) ( 1883(b)(2)(A) of the Act). Under a subsection

entitled, "Technical Corrections to AFDC and Child Support

Programs," the Senate Report accompanying the amendment

explained that no distinction between children deprived due

to the absence, incapacity or death of a parent, and those

deprived due to the unemployment of a parent, was intended.

S. REP. NO. 313, 99th Cong., 2d Sess. 1074 (1986).9 

 II.
 Analysis
 

 The issues involved in this case are purely ones of

statutory construction. Our review is, therefore, de novo.

United States v. M.I.M., 932 F.2d 1016, 1019 (1st Cir. 1991).
 

See generally Commonwealth of Mass. v. Lyng, 893 F.2d 424,
 

428 (1st Cir. 1990) (questions of law decided by a trial

court are not binding on the reviewing court). 

A. The Family Filing Rule
 

 

9. The Senate Report provides, in part, that,

 no such distinction between these two categories
 was intended, and this provision will clarify that,
 in a State that provides AFDC on the basis of the
 unemployment of a parent, siblings who are
 dependent for that reason must be included in the
 AFDC unit. 
Id.
 

 -14-
 14

 1. Background
 

 We begin by addressing the application of the

family filing rule, 42 U.S.C. 602(a)(38), to the plaintiff

class. The rule provides that in making the determinations

of need with respect to a dependent child, states must

include any parent of a dependent child and any brother or

sister if such brother or sister "meets the conditions

described in clauses (1) and (2) of section 606(a) or in

section 607(a)." Id. Plaintiffs challenge the State's
 

practice of including the child common to both parents in the

family filing unit because, under the Secretary's

interpretation, the child meets the conditions described in 

607(a). We must determine what Congress meant when it

referred to the "conditions described" in 607(a); in

particular, whether Congress intended to incorporate need as

a condition that must be met before a child may be included

in the filing unit. Although several courts have interpreted

the family filing rule with respect to children defined as

dependent under 606(a), the rule as originally enacted,

none has specifically interpreted the rule with respect to 

607(a) children. See discussion infra Part II, Section A 3.
 

 The district court held that the family filing rule

requires the inclusion of children who meet the definition of

dependent found in 607(a) only if such children are first

determined to be needy. In so holding, the district court

 -15-
 15

recognized the abundance of federal authority requiring the

inclusion of children defined as dependent in 606(a)

without such a prior determination of need. See Memorandum
 

Decision at 7 n.11. The district court's reason for

distinguishing between these categories of children centered

on the placement of the word "needy" in the respective

sections of 606(a) and 607(a). Both sections begin by

stating that "the term `dependent child' means a needy child"

who meets certain conditions. 42 U.S.C. 606(a) and

607(a). The essence of the district court's distinction was

that, because the word "needy" appears before clauses (1) and

(2) in 606(a),10 it is not to be considered in making the

determination under 606 (a) for the reason that the family

filing unit rule refers only to the conditions specified in

those clauses. In 607 (a), by contrast, the word needy

appears within the section which is not broken into numbered

clauses, and the family filing rule simply references 

607(a).11 The placement of the word "needy" was the sole

basis for what the district court found to be the plain

meaning of the rule. 

 

10. See supra note 3. The statute begins, "[t]he term
 
`dependent child' means a needy child (1) who has been
deprived of parental support . . . [.]"

11. See supra note 5. Section 607(a) has no demarcated
 
clauses, and simply begins, "[t]he term `dependent child'
shall, notwithstanding section 606(a) of this title, include
a needy child who has been deprived of parental support . . .
."

 -16-
 16

 Our inquiry does not end with the placement of the

word "needy" in 607(a) of the statute. We examine the

family filing rule in the context of its place in the

statutory scheme and in light of its statutory purpose. See
 

Conroy v. Aniskoff, 61 U.S.L.W. 4301, 4302 (U.S. March 31,
 

1993) (No. 91-1353) (noting the "`cardinal rule that a

statute is to be read as a whole'" and that "the meaning of

statutory language, plain or not, depends upon context."

(citations omitted)); Evans v. Commissioner, Maine Dep't. of
 

Human Servs., 933 F.2d 1, 5 (1st Cir. 1991) (concluding on
 

the basis of the language of the statute as read in the

context of its structure and in the light of its purposes).

Cf. St. Luke's Hosp. v. Secretary of Health and Human Servs.,
 

810 F.2d 325, 331 (1st Cir. 1987) (applying a detailed

analysis after an initial, literal reading of the statute).

A thorough analysis is especially warranted where, as here,

we are charged with interpreting a complex and technical

statute which has been amended over time and which contains

elaborate, internal cross-references. 

 As we explain below, we think that the term

"conditions described" in the family filing rule is ambiguous

with respect to children defined as dependent under 607(a).

When we find such ambiguity in a statute, we give

considerable weight to the interpretation rendered by the

agency charged with administering that statute. See Evans,
 

 -17-
 17

933 F.2d at 7. Our examination of the language in the

context of its place in the statutory scheme and in light of

its statutory purpose convinces us that the Secretary's

interpretation of 602(a) (38)(B) is not only permissible,

but fully consonant with the will of Congress. See Chevron
 

U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S.
 

837, 843 (1984) (explaining that if a statute is silent or

ambiguous with respect to the issue presented, the question

for the court is whether the agency's answer is based on a

permissible construction of the statute).

 2. Ambiguity
 

 The district court assumed that Congress meant the

term "conditions described" to incorporate all of the terms

listed in the cross-referenced section, 607(a), and thus to

include the term "needy." Although the term "needy" plainly

appears in 607(a), it does not necessarily follow that

Congress intended for that term to be a "condition described"

for the purpose of 602(a)(38). Section 607(a) and 606(a)

function in the statutory scheme to define the two categories

of "dependent children" who may be eligible for AFDC.

Regardless of which categorical definition is used, no child

or family may receive AFDC unless that child or family is

financially needy. The family filing rule has a different

 -18-
 18

function in the statutory scheme; that of defining the unit

pursuant to which need is be determined under 602(a)(7).

This function is apparent from the plain terms of the rule,

itself, which begins: "in making the determination under

paragraph (7) . . . a State agency shall include . . . ." As

discussed supra in Part I Section A, need for AFDC purposes
 

is not a fixed condition; its assessment depends on a variety

of factors. To assume that Congress intended to include need

among the "conditions described" for the purpose of the

family filing rule--which, by its plain terms, exists prior

to the assessment of need and as a basis for the definition

of need--is not the most sensible reading of the rule. 

 We find that it is not clear from the face of the

rule which conditions Congress intended to include when it

referred to the "conditions described" in 607(a). While in

the abstract, it might be reasonable to presume that a

reference to the "conditions described" in a cross-referenced

section refers to all descriptive terms contained in that

section, such a reading is problematic in this context. By

including "needy" as a "condition[] described," the district

court's interpretation does not properly account for, and

reads circularity into, the facially-evident function of the

family filing rule. 

 3. Case Law and Legislative History
 

 -19-
 19

 Our examination of the case law interpreting the

family filing rule as originally enacted, and the legislative

history behind Congress' amendment of the rule to add 

607(a), leads us to conclude that the district court's

interpretation is erroneous and to uphold the Secretary's

policy. 

 Part of examining the language in context entails

reviewing the case law which has interpreted the family

filing rule to compel the inclusion of non-needy children

defined as dependent under 606(a). Overwhelmingly, courts

have rejected the argument that a child must be needy before

that child is to be included in the family filing unit. See
 

Gorrie v. Bowen, 809 F.2d 508, 513-16 (8th Cir. 1987). See
 

also Bradley v. Austin, 841 F.2d 1288, 1294 (6th Cir. 1988);
 

Creaton v. Bowen, 826 F.2d 6 (9th Cir. 1987); Oliver v.
 

Ledbetter, 821 F.2d 1507, 1513 (11th Cir. 1987). The Supreme
 

Court, in a case upholding the constitutionality of the

family filing rule, dismissed the argument in a footnote,

citing to clear legislative intent to include non-needy

children in the family filing unit. See Bowen, 483 U.S. at
 

593 n.5. The Court commented that construing the rule to

require the inclusion of only needy children was "completely

inconsistent with the intent of Congress as explained in the

Secretary's request for legislation, in the Senate Print, and

in the Conference Report as well." Id. Rather than pursuing
 

 -20-
 20

its own analysis, the Court noted its satisfaction with that

performed by the district court in Gillard v. Kirk, 633 F.
 

Supp. 1529, 1548 (W.D.N.Y. 1986), and made favorable

reference to the Eighth Circuit's decision in Gorrie, 809
 

F.2d at 513-516. See Bowen, 483 U.S. at 587 n.5. 
 

 The express purpose behind the enactment of the

family filing rule, as apparent in the Senate Print

referenced by the Supreme Court and cited and discussed supra
 

in Part I, Section C, was to change the practice whereby

families could exclude children who had other resources,

i.e., children who were not independently needy, from the

family filing unit. See Bowen, 483 U.S. at 599 (noting that
 

the purpose of the rule is to "deny [] a family the right to

exclude a supported child from the filing unit"). This

legislative history formed the cornerstone of the district

court's reading of the family filing rule to require the

inclusion of non-needy children in Gillard, 633 F. Supp. at
 

1546. 

 It is true that in Gorrie, the other case cited by
 

the Supreme Court, the court began with the language of 

606(a) and was initially persuaded by the placement of the

word "needy" outside the numbered clauses. The court did not

rest its conclusion solely on this reading, however, but went

on to do a detailed, contextual analysis of the family filing

rule. The detailed analysis corroborated that court's

 -21-
 21

initial reading of the rule to require the inclusion of non-

needy children in the family filing unit. See Gorrie, 809
 

F.2d at 513-16. 

 Unlike the court in Gorrie, the district court in
 

the instant case stopped with its reading of 607(a). The

court did not go on to consider the particular meaning that

term might have in the context of the family filing rule.

Had the district court continued to perform a detailed

analysis, it would have discovered that the legislative

purpose of the rule, and its function in the statutory

scheme, were not served by its reading. Like the Supreme

Court, we conclude that the real problem with construing the

rule to require the exclusion of non-needy children is that

such a construction flies in the face of Congressional intent

to end the practice of excluding non-needy children from the

filing unit. We are not persuaded by the truncated reading

of the district court, but proceed to address the district

court's correct concern that 607(a) is drafted differently

from 606(a). 

 The word "needy" appears in 607(a), and the

family filing rule references the entire section, whereas the

"needy" is offset in 606(a) and the family filing rule

refers to clauses that do not contain that term. The

question is what effect to give to that difference, given the

function of the rule in the statutory scheme, its purpose,

 -22-
 22

and the manner in which the rule has been interpreted. In

other words, was Congress' cross-reference to a previously-

drafted section of the statute in which the criterion of need

is not set off in a separate clause but appears within the

referenced section, a clear signal of its intent to include

need as one of the "conditions described" as applied to 

607(a) children? We do not think so. 

 First, to the extent that the issue is the

exclusion of non-needy children from the family filing unit,

the same analysis of legislative purpose used with respect to

 606(a) children applies to this case. Moreover, in the

previously- cited Senate Print accompanying the DEFRA

amendment, the Congress made clear who the exceptions to the

family filing rule were to be. Namely, the provision would

require the inclusion of all dependent minor children except

SSI recipients and stepchildren. See Bowen, supra Part I,
 

Section C (citing S. Print No. 98-169 at 980). Otherwise,

the family filing unit rule was intended to be an inclusive

rule, inclusive especially of non-needy siblings. 

 Second, the Congressional history behind the

amendment of 42 U.S.C. 602(a)(38), to include children

eligible under 607(a), unambiguously expresses Congress'

intention not to distinguish between children eligible under

the two sections. See S. REP. NO. 313 at 1074, supra note 9
 

and accompanying text. Congress, having omitted a reference

 -23-
 23

to 607(a) children in the original rule, stated that it

intended to create no such distinction between children

eligible under 606(a) and children eligible under 607(a).

That Congress labeled the amendment a "[t]echnical

[c]orrection[]" further underscores its intention against

substantively different treatment of these categories of

children. In sum, we ascertain no basis for a finding that

Congress intended to treat these categories of children in a

substantively different manner, permitting the exclusion of

non-needy children eligible under 607(a), but compelling

the inclusion of such children eligible under 606(a).12 

 In overturning the finding of the district court,

we note that this matter of statutory construction is made

difficult by the patchwork manner in which the AFDC statute

has been enacted. We deal with a statute, and a section

within a statute, which has been amended frequently, and

which is not rewritten in its entirety with each amendment.

 

12. Plaintiffs note that the legislative history of the Tax
Reform Act, which amended the family filing rule to include 
607(a) children, refers to the required inclusion of
dependent children. From Congress' use of the word
dependent, plaintiffs conclude that Congress meant to require
the inclusion of only needy 607(a) children. The
legislative history of the DEFRA amendment which created the
original family filing rule covering 606(a) children,
however, similarly refers to the compelled inclusion of
dependent children. As we have explained, the compelled
inclusion of 606(a) children has been upheld by other
federal courts. Plaintiffs' argument, without more, does
nothing to advance a reasonable basis for treating 607(a)
children differently from 606(a) children. 

 -24-
 24

As we observed in Sweeney v. Murray, 732 F.2d 1022, 1024-25,
 

1027(1st Cir. 1984), with regard to a different subsection of

the AFDC statute, the provision at issue in this case is

anything but elegantly drafted, but its legislative directive

is comparatively clear. We hold that the Secretary's policy

of requiring the inclusion of non-needy 607(a) children in

the filing unit resonates with the legislative purpose of the

rule and upholds its integrity in the statutory scheme. 

B. The Reduction of AFDC by Unemployment Compensation
 

 The final issue is more difficult. The district

court held that the HHS/DHS practice of reducing AFDC

payments by the amount of the stepparents' unemployment

conflicted with the plain meaning of 42 U.S.C. 

607(b)(1)(B)(iv). Once again, the district court anchored

its conclusion in what it characterized as plain meaning, and

ended its inquiry there. The court determined that 

607(b)(1)(B)(iv) authorized the reduction only of the income

"`payable to [a] child . . . specified in [ 607(a)].'"

Memorandum Decision at 5. Thus, only the AFDC payments going

to children eligible under 607(a) would be reduced by the

unemployment compensation received by the principal earner. 

 Defendants point to two problems with the district

court's interpretation. First, the court ignored that

 607(b)(1)(B)(iv) of the statute actually compels the

reduction of the AFDC payment otherwise payable to "a child

 -25-
 25

or relative specified" in 607(a). The word "relative"
 

creates an ambiguity in the statute which the court failed to

apprehend. Second, once this language is placed in the

context of the larger statutory scheme, the district court's

reading cannot be reconciled with the family filing rule.

For the reasons that follow, we conclude that deference to

the Secretary is proper in this instance. 

 We first examine the meaning of the word "relative"

in 607(b)(1)(B)(iv). That section directs attention to a

child or relative specified in 607(a). Turning to 

607(a), one sees that the reference encompasses relatives

specified in 606(a)(1) -- a "father, mother, grandfather,

grandmother, brother, sister, stepfather, stepmother,

stepbrother, stepsister, uncle, aunt, first cousin, nephew,

or niece." 42 U.S.C. 606(a). Defendants argue that a

plausible interpretation of 607(b)(1)(B)(iv) is that it

directs the deduction of unemployment compensation from AFDC

payable to any 607(a) child, or to any listed, co-resident

relative of that child. Plaintiffs offer a strong contrary

argument that the relatives listed in 606(a)(1) are

intended to represent only the caretaker relatives of the

dependent child. Whether for the purposes of 

607(b)(1)(B)(iv), Congress meant to provide a list of

co-resident relatives or to limit its reference to caretaker

relatives is, arguably, ambiguous. As we explained supra,
 

 -26-
 26

when we find ambiguity we give deference to the considered

interpretation of the Secretary. See Evans, 933 F.2d at 7.
 

 Even were we to agree with plaintiffs' argument as

to the meaning of the word "relative," we would still

encounter the problem of conflict with the later-enacted

family filing rule when we place 607(B)(1)(B)(iv) into the

context of the statutory scheme. As we have held, the family

filing rule applies to 607(a) children. The rule

establishes a uniform system whereby need is calculated on

the basis of the collective needs of the household. Adopting

the plaintiffs' reading of 607(b)(1)(B)(iv) would lead to

the anomalous practice of assessing need collectively, and

then splintering the family unit at the point of determining

the proper AFDC payment. To assess need based on one

picture, and arrive at benefits based on another, is

unworkable and undercuts the policy behind the family filing

rule. See Bowen, supra Part I Section C (citing S. Print No.
 

98-169 at 980) (noting that one purpose of the rule is to

"ensure that the income of family members that live together

and share expenses is recognized and counted available to the

family as a whole"). 

 Where different provisions of the same statutory

scheme are in tension, a court should make every effort to

construe such provisions so as to achieve consistency and

harmony. See Atwell v. Merit Systems Protection Bd., 670
 

 -27-
 27

F.2d 272, 286 (D.C. Cir. 1981) (provisions should, wherever

possible, be construed to achieve consistency); Citizens to
 

Save Spenser County v. EPA, 600 F.2d 844, 871 (D.C. Cir.
 

1979) (duty to achieve harmonization of conflicting

provisions). To the extent that the issue is one that has

the potential for undermining the policy behind the family

filing rule, we believe that the Secretary is in the best

position to resolve the conflict. See Chevron, 467 U.S. at
 

844 (1984) (citing United States v. Shimer, 367 U.S. 374,
 

382, 383 (1961), for the proposition that the principle of

deference to administrative interpretations is followed

whenever a decision as to the meaning of a statute involves

reconciling conflicting policies). Our conclusion is

buttressed by the fact that the Secretary was involved in

proposing and drafting the family filing rule. See Gorrie,
 

809 F.2d at 514 (noting the Secretary's involvement in

proposing the legislation for the purpose of establishing

rules about who must file together for AFDC); Bowen, 483 U.S.
 

at 592, 593 n.5 (same); St. Luke's Hosp., 810 F.2d at 331
 

(counseling deference where the Secretary was present at the

statute's creation and thus is likely to be in a better

position to know the intent of the enacting Congress). 

 Finally, we observe, as did the district court,

that it is not at all clear that Congress has addressed the

precise issue presented; namely, the application of these

 -28-
 28

distinct statutory provisions to the particular situation of

families composed of both 606(a) and 607(a) children. In

Chevron, the Supreme Court explained that in construing a
 

statute courts should first seek to ascertain "whether

Congress has directly spoken to the precise question at

issue." Chevron, 467 U.S. at 842. Although we do not take
 

the command to mean that Congress must anticipate all of the

possible scenarios that might arise under a statute, we

believe that this is a case in which deference to the

interpretation of the Secretary is especially warranted. As

we explained in St. Luke's Hosp., 810 F.2d at 331, "[a]n
 

implied delegation of a law-declaring function is especially

likely where, as here, the question is interstitial, involves

the everyday administration of the statute, implicates no

special judicial expertise, and is unlikely to affect broad

areas of the law." Cf. Drysdale v. Spirito, 689 F.2d 252,
 

261 (1st Cir. 1982) (counseling deference where the issue is

interstitial, and "imbued with administrative history and

complexity"). 

 The factors of ambiguity in a statute, conflicting

statutory provisions, and a complex, interstitial question

arising in the daily administration of the statute--all

counsel deference to the Secretary. We must only assess

whether the Secretary's interpretation is permissible. We

find that the Secretary's policy harmonizes the two statutory

 -29-
 29

provisions, while doing violence to neither individually.

The Secretary sensibly applies the family filing rule. In

reading 607(b)(1)(B)(iv) to require the deduction of

unemployment compensation from the AFDC payment, the

Secretary reasonably effectuates the will of Congress to

treat AFDC as a supplement to unemployment compensation,

rather than treating the two as alternative forms of

assistance. 

 At oral argument, both parties highlighted

inequities resulting from the respective interpretations of

the district court and the Secretary. Under the district

court's reading, families which contain both 607(a)

children and 606(a) children receive a greater AFDC benefit

than that received by families who are composed entirely of 

606(a) children or entirely of 607(a) children. Defendants

pointed out that, by carving out two units, the district

court effectively permits one unit to receive the maximum

payment of AFDC, while the other one receives the maximum

payment of unemployment compensation. Plaintiffs emphasized

that under the Secretary's reading, families composed of both

 606(a) and 607(a) children receive less AFDC than

families composed only of 606(a) children. Once AFDC is

characterized in the light of its statutory purpose as a

supplement to unemployment income, however, it is apparent

that the total income going to families with both categories

 -30-
 30

of children is no less than that going to a 606(a) family

composed of the same number of persons. 

 We recognize the hardship visited on families in

the plaintiff class, whose life circumstances changed

dramatically following the unemployment of the principal

earner. The income going to the family unit was reduced by

the onset of unemployment, and then was further diminished by

reduction of the AFDC payment in the amount of unemployment

compensation received. The impact on the families in the

plaintiff class of the HHS/DHS policies is exacerbated by the

way in which Maine treats the gap between the standard of

need and the maximum AFDC payment. See discussion supra Part
 

I, Section A. Maine's policy permitted many families prior

to the unemployment of the principal earner to attain the

maximum AFDC payment because the amount of countable income

earned by the principal earner fell within the gap. See id.
 

Maine's treatment of the gap, however, generally permits more

families to live at a higher level of subsistence, and has

not been challenged by the plaintiff class. 

 In the end, we must acknowledge that the Congress,

HHS and DHS are charged with the difficult task of allocating

limited funds across a range of needy families. Overall, we

believe that the practical implications of the Secretary's

reading of the statute, when viewed allocationally, are more

equitable than those flowing from the construction given by

 -31-
 31

the district court. The decision of the district court is

Reversed. No costs. 
 

 -32-
 32